[No. 11418. Department Two. — December 21, 1887.]

## In the Matter of the Estate of CAROLINE REINHARDT, Deceased.

Will— Construction of— Common Property does not Include Separate Property — Determinable Life Estate — Devise by Implication. — The will in question contained a provision as follows: "I give and bequeath to my said husband the use and income of all my property of which I may die possessed, to his sole use and benefit, as long as he remains my widower; provided, however, and it is hereby made an express condition, that he shall not be authorized to sell, convey, or dispose of, or mortgage or in any way encumber, any of such property. But in case he should marry again, then I direct that my share in the common property shall go to my children." At the time of her death, the testatrix had no property that was not her separate estate. She left surviving her husband and four children. *Held*, that the term "common property," as used in the will, could not be construed to mean "separate property"; that the husband took under the will a determinable life estate only, and that, there being no devise to the children

by implication, as to all the estate except such determinable life estate the decedent died intestate, and the same should be distributed, one third to the husband, and the remaining two thirds to the children.

APPEAL from a decree of the Superior Court of the city and county of San Francisco distributing the estate of a deceased person.

The facts are stated in the opinion of the court.

*J. M. Wood, Joseph Rothchild,* and *J. C. Bates,* for Appellants.

By the will in question, the widower takes by express words of limitation a life estate only, without power of alienation, and the children take the remainder. (*Clark* v. *Boorman's Ex'rs,* 18 Wall. 493; *Birmingham* v. *Lesan,* 76 Me. 482; *Giles* v. *Little,* 104 U. S. 291; *Brant* v. *Virginia C. & I. Co.,* 93 U. S. 326; *Tolland Co. Ins. Co.* v. *Underwood,* 50 Conn. 493; *Pratt* v. *Douglass,* 38 N. J. Eq. 518; *Benton* v. *Benton,* 63 N. H. 289; *Lienan* v. *Summerfield,* 41 N. J. Eq. 381; *Corby* v. *Corby,* 85 Mo. 371; *Fernbacher* v. *Fernbacher,* 4 Dem. 227.) The conclusion is irresistible that the testator intended to dispose of her entire by will, and a gift by implication to the children should be presumed in order to carry out her intent. (Schouler on Wills, sec. 561; *Robinson* v. *Greene,* 14 R. I. 191.)

*Stanly, Stoney & Hayes,* for Respondents.

The words "common property" are technical, and cannot be construed as meaning separate property. (Civ. Code, sec. 1327; *Graham* v. *Graham,* 23 W. Va. 36; 48 Am. Rep. 364; *Brant* v. *Virginia Coal and Iron Co.,* 93 U. S. 326.)

THORNTON J.— This is an appeal from a decree of distribution made and entered by the superior court of the city and county of San Francisco.

The case here presented turns on the meaning of the following portion of the will of the deceased above named:—

" I give and bequeath to my said husband, John B. Reinhardt, the use and income of all my property of which I may die possessed, to his sole use and benefit, as long as he remains my widower; provided, however, and it is hereby made an express condition, that he shall not be authorized to sell, convey, or dispose of, or mortgage or in any way encumber, any of such property. But in case he should marry again, then I direct that my share in the common property shall go to my children."

The property subject to distribution and distributed by the decree was the *separate* property of the testatrix. No common property is involved herein, for there was none at the time the decree was rendered. J. B. Reinhardt, the husband mentioned in the will, remained unmarried and a widower. Four children survive the testatrix.

The court held that J. B. Reinhardt took and held the use and income of the estate under the will as long as he remained the widower of the deceased; that is, that he took a determinable life estate under the will only, and as to all the estate except this determinable life estate the decedent died intestate.

The court, having so held, then proceeded to distribute the estate according to the statute of descent in this state, and ordered its distribution as follows:—

To J. B. Reinhardt, widower of said deceased above named, the use and income of all the real and personal estate of decedent, and an undivided one third in fee of said estate. To the children, or those who represented them, the residue.

There can be no doubt that the husband, J. B. Reinhardt, took a determinable life estate, as the court ruled. That the remaining portion of the fee is undisposed of by the will is equally clear. We say " portion of the fee remaining," for the reason that the particular estate and the remainder, and here, the life estate and that which is left at its termination, constitute one estate,—the fee.

They are different and distinct parts of one whole. (2 Bla. Com. 164.)

There is in the will no disposition of the residuum. We can perceive nothing in the words "but in case he should marry again, then I direct that my share of the common property shall go to my children," adverse to such a conclusion.

The fact that there was no common property of the testatrix does not alter the words of the devise of the common property. Nor does the ignorance of the testator of the signification of the words used by him in a will affect the meaning which should attach to them.

A will is to be construed according to the intention of the testator. (Civ. Code, sec. 1317.) The intent is to be deduced from the words of the will. The meaning of the words employed in the will evince the intent. These words must "be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained." (Civ. Code, sec. 1324.) "Where the words employed are *technical, they are to be taken in their technical sense,* unless the context clearly indicates a contrary intention." (Civ. Code, sec. 1327.) There is nothing in the context here which shows that the words "common property" were not used in their technical sense. To give a different sense to the words of a will because the testator did not know their meaning would be contrary to every rule adopted for the construction of such instruments, and would in effect do away with the statute which requires them to be in writing. There is nothing inconsistent in devising the use and income of separate property to one for life, leaving the residue of the separate property undisposed of, and the common property to another when the life estate terminates. If the testator had no power to devise common property, or had none to devise, we cannot see that the meaning of the words of the will would be changed or affected

thereby.   A devise of common property when there was
none would not convey separate property.   If a testator
thought, as a matter of law, or was so advised by coun-
sel learned in the law, that he could pass a right to it by
will, while under the law he could not, it could not be
held, unless we disregard the law, that such a provision
in a will should be construed to refer to and pass prop-
erty which he could devise.   As well might it be con-
tended that a bequest of a watch when the testator did
not have one to bequeath would pass some other article
of personal property, or that a devise of a city lot when
the testator did not own one would pass a farm in the
country.

As to the remainder of the separate property after the
life estate carved out of the fee has come to an end,
the will is absolutely silent, unless we can hold that a
life estate of such property is the fee, which would be
absurd.

We can find nothing in the will before us which tends
to maintain the view that the children of the testator
took the whole property distributed when the surviving
husband married or died, under a devise arising by im-
plication.   As to the portion of the fee remaining on the
termination of the life estate, the will, as we have said
above, and we say again, is silent.   There is, then, noth-
ing to support the implication.   The foundation is
wanting on which such implication can arise or stand.
The implication must arise from and stand on some-
thing expressed in the will.   It must be deduced from
something said in the will.   When the will is silent, and
there is nothing from which an implication can be de-
duced, no implication can be indulged.   We can dis-
cover in the will before us no devise by implication of
the character mentioned.   There is nothing in the point
just discussed to alter the conclusion of intestacy hereto-
fore announced.

If a larger estate will not be implied where a smaller

estate is expressly granted,—and we think this is sound law (see Schouler on Wills, secs. 559, 561),—it cannot be held that a bequest or devise of common property is, under any circumstances, a bequest of separate property.

*Nickerson* v. *Bowly*, 8 Met. 424, supports the result we have reached. The case cited arose upon the will of Thomas Rider, which was in these words: "As to such worldly interests as God hath been pleased to bless me with in this life, I give, bequeath, devise, and dispose of the same in the following manner, viz.: I give and bequeath to my wife, Polly Rider, the use and improvement of all my estate, real and personal and mixed, for her own use and benefit, so long as she may continue my widow. I also constitute and appoint my wife, Polly Rider, to be executor of this my last will and testament." No other disposition of any part of the testator's estate was made by will. He left no issue.

Polly Rider died unmarried, having enjoyed the use and improvement of the estate during her life. She left a will appointing Bowly, the appellee, her executor. On the distribution of Thomas Rider's estate, one half of it was decreed to the executor of Polly Rider. (In the report of this case, there is some confusion in the name of the testator. The name is stated on page 424 to be Thomas Rider. On the succeeding page, in stating the estate to be distributed under the will, it is said to be that of David Rider. The words used are, "said David Rider." As there is no David Rider mentioned before, and Thomas Rider is the only one of that name mentioned, the implication is irresistible that the estate distributed was that of Thomas Rider.)

The opinion is by Shaw, C. J. (no one dissenting). After referring to the statute of distribution, under which the widow of an intestate, there being no issue, was entitled to have one half of the estate distributed to her, he proceeded:—

"It is a well-established rule of law that the right to

a distributive share of personal estate, under the statute of distributions, is a vested interest, vesting, in point of right, at the time of the decease of the intestate, although the persons to take, and the amount to be received, must be ascertained and determined by a decree of the probate court, which, from various causes affecting the settlement of the estate, may not be made till long afterward. (*Davers* v. *Dewes*, 3 P. Wms. 49, note; *Foster* v. *Fifield*, 20 Pick. 70; *Hayward* v. *Hayward*, 20 Pick. 519.) It seems to follow as a natural consequence that Mrs. Rider's vested right to one half of the personal property, subject to the gift of the use thereof to herself for life, like all other vested rights to personal property, went to her personal representatives. Such was the view which appears to have been taken of the case by the probate court; and we are of opinion that it was correct."

In the case cited, it was urged that it could not be reasonably inferred that it was the intention of the testator, after giving the property to his wife for life, that he intended that the life tenant should have any part of it absolutely, and in the absence of all expression of his intentions, it should be construed as a gift to his heirs by implication.

As to this, the learned justice said: "A gift by implication must be founded upon some expressions in the will from which such intention can be inferred. It cannot be inferred from an absolute silence on the subject. It may be admitted, in a popular sense, that when a deceased person has given a part of his property to one object of his bounty, he had no intention that such person should take another portion. But we think the true answer is, that the intention of the testator is to govern, so far only as he has communicated that intention, *by his will*, either in terms or by implication; but if he has left undevised property, the disposition of it is not governed by his will, but by another rule having its origin in another source, in the application of which the intent of

the testator is not the governing rule, and can have no influence. It operates in the same manner as if the deceased had left no other property and made no will. If, therefore, the intent of the testator not to give the remainder to the same person could reasonably be inferred from a gift of personal property to one for life, in terms, it could have no effect in regulating the disposition of intestate property. If, however, it were thought important to inquire into the intent of the deceased, where he has made a will, but left property undisposed of, either in terms or by implication, as every man is presumed to know the law, it may reasonably be inferred, as his *intention*, that the residue should be disposed of according to law."

The opinion then proceeds to state that the point seems to be well settled, both in England and Massachusetts, and cites *Davers* v. *Dewes*, 3 P. Wms. 40; *Dicks* v. *Lambert*, 4 Ves. 725, 732; *Briggs* v. *Hosford*, 22 Pick. 288; *Ex parte Kempton*, 23 Pick. 163. (See also Schouler on Wills, sec. 568, and cases cited in notes.)

In the case just above cited, the parties setting up the claim to the part distributed to the representative of Polly Rider were collateral heirs, and personal property was also involved. But these facts do not detract from it as authority here.

We will add further, in the case cited by counsel for appellant (*Robinson* v. *Green*, 14 R. I. 181), a devise by implication was allowed because the conclusion was irresistible. The court so said, at the same time observing that "the rule in regard to devises and bequests by implication is very strict" (p. 191).

The subject of devises raised by implication is much discussed in *Parker* v. *Tootal*, 11 H. L. Cas. 143. We think the conclusion here reached is sustained by what is said in that case. We refer particularly to the observations of the lord chancellor (Westbury) on page 162, as well as to the judgments of the other law lords therein.

Lord Westbury in his argument lays stress on the rule that the intention must be collected from the language that the testator has used, and that if the language is satisfied by going to a certain extent, there is no obligation to go further, which last is, in our judgment, but saying that a court cannot go further consistent with the well-settled rule.

We are of opinion the court ruled correctly that as to the residue of the fee above defined the decedent, Caroline Reinhardt, died intestate.

The property of persons dying intestate descends under the statute to those mentioned in it, of which the surviving husband is one. As to the residue of the property not passing to the husband of which the testator died intestate, it descended under the statute to her children. The intestate in this case left four children. In such a condition of the family, one third vested at the time of the death of Caroline in the surviving husband, Reinhardt, and the other two thirds in her children in right, but not in its enjoyment until the date at which they were entitled to distribution.

We find no error in the record, and the judgment is affirmed.

McFARLAND, J., and SHARPSTEIN, J., concurred.