THE COURT.
 

 Cora E. Mitchell died in San Jose on December 25, 1928. She left a will naming as legatees and
 
 *630
 
 devisees her surviving husband, John W. Mitchell, four children of a previous marriage, Zelma Reeve, Romayne 0. Reeve, Vernon J. Reeve, and Mabel I. Tates, and a daughter born of her marriage to Mitchell, Mary Anita Mitchell, now Mary Anita Phillips. John W. Mitchell was appointed executor of her will. In April, 1931, he filed his final account and petition for distribution. A decree settling his account and ordering distribution was entered on October 6, 1931. Zelma Reeve, Romayne 0. Reeve, Vernon J. Reeve and Mabel I. Yates appealed from the decree. Since that time John W. Mitchell died and Mary Anita Phillips was appointed administratrix of his estate, and is a respondent here in that capacity as well as in her individual capacity.
 

 In her will Cora E. Mitchell left two parcels of real property to her daughter, Zelma Reeve. To each of her other four children she left a cash legacy of $5,000 and devised to them, share and share alike, all her unimproved real property in the city of San Jose. She provided a cash legacy of $20,000 to John W. Mitchell. She also left to him their home and furnishings in San Jose, and the “prune orchard and land on the east side of the Coyote Creek together with all equipment and farm implements; also the gravel pits on the Coyote Creek” for the term of his natural life with remainder share and share alike to the same four children. John W. Mitchell was named as residuary legatee.
 

 The decree of distribution recites that just prior to her death Cora E. Mitchell paid to each of Romayne O. Reeve, Vernon J. Reeve, Mabel I. Tates and Anita Mitchell the sum of $5,000 in lieu of the cash legacy in that amount. The court, considering the legacies adeemed, did not order payment of that sum to each of the legatees named in the will. In accordance with the terms of the will the court ordered the home place and furnishings distributed to John W. Mitchell for life with remainder to the four children named by the will so to receive it. The same disposition was ordered of one additional piece of property containing about sixteen acres situate in Santa Clara County, which, by the description in the decree, shows it to be east of the Coyote Creek, and therefore “on the east side of the Coyote Creek” as described in the will. That this sixteen-acre parcel so distributed to Mitchell for life constitutes the “prune orchard”
 
 *631
 
 named in the will is not disputed. All the rest of the known real property specifically devised, with the exception of that devised to Zelma Reeve and the San Jose lots left to the other four children, was ordered distributed to John W. Mitchell in fee.
 

 On this appeal from the decree of distribution it is claimed that the court erred in deciding that the cash legacies to the four children were adeemed; further, that certain of the pieces of real property situated in Santa Clara County and distributed to John W. Mitchell in fee lie on the east side of the Coyote Creek and should have been distributed to him for life with remainder to the four children named so to take.
 

 For the purpose of this appeal only the second point need be considered. The question is whether the record presented shows that the court erred in ordering distribution in fee to John W. Mitchell of certain parcels of land which lie east of Coyote Creek and which, if appellants are correct, should have been distributed to him for life only.
 

 ' The appeal was taken under the provisions of section 953a of the Code of Civil Procedure. However, we are without the aid of a transcript of the evidence taken at the hearing of the petition for distribution for the reason that the notes of the reporter who attended the hearing and took down in shorthand the testimony of the witnesses were destroyed by fire when the court house of the county of Santa Clara was destroyed by fire on May 18, 1931, which was three days after the hearing was had and nearly five months before the decree of distribution was entered. The appellants made numerous attempts without success to be relieved from their unfortunate predicament caused by the fire all to the end that the cause be remanded, the issues be retried, and the litigants as well as this court have the benefit of a transcript of the evidence in the event of a subsequent appeal.
 

 The respondents concede, in fact assert, and the appellants of course agree, that “there is nothing ambiguous or uncertain in the language of the will decreeing to Mitchell for his natural life the prune orchard and land east of Coyote Creek” and the “gravel pits”. It is also asserted by the respondents “that the will of said decedent is clear and unambiguous as to its legal construction, but contains a description of a devise of real property to John W. Mitchell
 
 *632
 
 for his natural life which is imperfect or incomplete on its face”. Then only, say respondents, was it necessary for the court to receive evidence to identify the prune orchard property in order to carry out the terms of the will.
 

 The weakness in the respondents’ position lies in the assumption as matter of law that the words “prune orchard and land” embrace within their meaning only land on which the prune trees are planted and that those words necessarily exclude for life tenancy other land owned by the decedent east of Coyote Creek. It is obvious that, in harmony with the respondents’ contention, the probate court’s conclusion that the only unit east of the Coyote Creek which was devised for life was based on its interpretation of the dispositive terms of the will, and that the word “orchard” referred only to the trees in the orchard and did not include the land in which the roots of the trees were imbedded. The respondents’ contention was and is for an interpretation of the language of the will which would restrict the word “land” to the land within the limits of the orchard, and as excluding any other land even though such other land may also be east of Coyote Creek.
 

 We are not in accord with the respondents’ interpretation of the will. Webster’s International Dictionary, second edition, defines “orchard” as a “plantation or large enclosure containing fruit trees”. Funk & Wagnall’s New Standard Dictionary contains the definition: “A collection of trees cultivated for their fruit or other product: . . . also, the enclosure or ground containing such trees.” In
 
 Attorney General
 
 v.
 
 State Board of Judges,
 
 38 Cal. 291, 296, the word was referred to as signifying an enclosure or assemblage of fruit or nut-bearing trees”. Webster’s definition of “an enclosure containing fruit trees” was adopted in
 
 Wright
 
 v.
 
 Sample,
 
 162 Ala. 222 [50 So. 268], An “assemblage” alone without the connotation contained within the word “enclosure” would signify nothing in relation to an orchard. In truth, we have little need of reference to authority to lead us to the conclusion that the plain meaning to be ascribed to the language used is that the land with the trees thereon constitute the “orchard”, and that the testatrix used the word in such ordinary signification and intended to devise to John W. Mitchell for- life the orchard and the other land belonging to her lying east of the Coyote Creek. The court
 
 *633
 
 is not at liberty to read the language of the will with any other than its plain, ordinary meaning. (Probate Code, see. 106.) Such meaning leads to the conclusion that the testatrix devised to her husband for life not only the orchard property but the other land owned by her in the vicinity and lying east of Coyote Creek. It remains to be seen whether it can be ascertained from the judgment roll that land in the vicinity of the orchard belonging to the testatrix and distributed by the court to John W. Mitchell in fee lies east of Coyote Creek.
 

 From the decree of distribution, which is a part of the judgment roll, it appears that there were five other parcels of land in the vicinity of the orchard, and that these other five parcels were distributed to Mitchell in fee. They are designated in the decree as parcels 5, 6, 7, 8 and 9, and in addition are described by metes and bounds. Parcel 5 contains 125.52 acres and was appraised by the inheritance tax appraiser at $5,025. The description shows that the north boundary of this tract is the “center line of Coyote River”. As this land lies south of the center line of Coyote Creek, there is no contention that it was improperly distributed to John W. Mitchell in fee, and the decree should be affirmed as to said parcel 5.
 

 Parcel 7 contains 5.16 acres and was appraised at $2,500. The description of that parcel, read in conjunction with the descriptions of the other parcels, reveals its position to be east of the center line of Coyote Creek and between that line and a tract formerly deeded by Mitchell to Chaves.
 

 Parcel 9 containing about 30 acres was appraised at $20,000. The courses and distances along a portion of its northerly and easterly boundaries are identical with the courses and distances describing the southerly and westerly boundaries of the 16-acre orchard tract which it in part adjoins. Its easterly boundary extends northerly along the westerly boundary of land formerly deeded by Mitchell to Ridley, the southerly boundary of which forms the northerly boundary of the 16-acre orchard. The north boundary of parcel 9 adjoins a small portion of the southerly boundary of the Chaves tract which adjoins the Ridley tract on the north. The westerly course, of the north boundary of parcel 9 is shown to be co-terminus with the south boundary of parcel 7. Its continuation is described as “to the most westerly corner of
 
 *634
 
 said 5.16-acre tract ... to the center of the Coyote River in the Easterly line” of the Hellyer tract. The described courses are then southerly along the easterly line of the Hellyer tract and the Gordon tract, along the northerly line of the 125.52-acre tract (shown to be along the center line of the Coyote River), and “thence along the center line of Coyote Creek” certain courses and distances to the point of beginning. It is certain from the descriptions in the decree that this piece of land lies east of the center line of the Coyote Creek.
 

 From the described positions of various parcels mentioned in the decree it is discernible that parcel 8, containing 20.6 acres and appraised at $800, and shown in the decree to lie east of the Chaves and Ridley tracts, also lies east of the Coyote Creek. This tract is also shown to lie along the southwesterly line of the 64.59-acre tract which comprises parcel 6, appraised at $2,580. Parcel 6 would therefore also lie easterly of the other lands mentioned and of the Coyote Creek.
 

 Inasmuch as parcels 7 and 9 lie east of the center line of the Coyote Creek, and the other parcels referred to, with the exception of parcel 5 and possibly the gravel pits, lie easterly of parcels 7 and 9, it clearly appears that it was error for the court to hold that only the orchard property was devised to Mitchell for life.
 

 According to the well established rule, a conveyance which describes land as along a watercourse other than tide water or a navigable stream, will include the land to the thread or center of the course. (Civ. Code, sec. 830; 4 Cal. Jur. 386 and eases cited;
 
 Drake
 
 v.
 
 Russian River Land Co.,
 
 10 Cal. App. 654 [103 Pac. 167]; 4 R. C. L., p. 103 and eases cited.) This rule should apply in the present case in construing the unambiguous language of the testatrix in devising land either on the “east side” or “east of the Coyote Creek”. In accordance with this interpretation the court therefore should have ordered the other land in addition to the orchard, lying east of the Coyote Creek, distributed to Mitchell for life.
 

 The record does not indicate what parcel or parcels described contained the gravel pits, but it is apparent from the wording of the will alone that they were not contained within the 16-acre orchard piece distributed to Mitchell for life. Error therefore also appears in the omission to make
 
 *635
 
 distribution to Mitchell for life of the lands referred to by the testatrix' as the gravel pits.
 

 On a motion for diminution of the record and application for leave to produce additional evidence, the appellants seek to prove certain facts occurring since the fire of May 18, 1931, when the reporter’s notes were destroyed, including subsequent attempted orders of the probate court pursuant to an asserted stipulation for a new- trial, and other matters. However, in view of our conclusions on the merits of the questions ruled upon herein, and the consequent opportunity of the appellants to secure a retrial of the issues on the hearing of the final account and petition for distribution, we perceive no useful purpose in reciting the facts leading to the filing of the motions or in considering the questions presented thereby. The motion and the application are therefore denied.
 

 The decree is affirmed in so far as it affects the distribution to John W. Mitchell in fee of said parcel 5 particularly described in the decree; the decree otherwise to stand reversed; neither party to recover costs of appeal.
 

 A petition for a rehearing was denied on March 9, 1938, and the following opinion then rendered thereon:
 

 THE COURT.
 

 The portion of the decision filed herein which affirms the judgment of the court to the effect that parcel 5 is distributable to John W. Mitchell in fee is not to be construed as relieving that parcel or the proceeds from any sale thereof from the burdens to which under the law the same may be subject as a portion of the residue. The intent in affirming the decree as to that parcel was to end the controversy concerning whether it was a portion of the residue, or was distributable to Mitchell for life. The question of who is entitled to the proceeds from the sale of said parcel should await the court`s decision upon retrial.
 

 The petition for modification is denied.