[Civ. No. 14712.   First Dist., Div. Two.   Feb. 28, 1952.]

FLORENCE GIACOMAZZI, Appellant, v. PHILIP JAMES ROWE, Respondent.

C. W. Ricketts for Appellant.

Forrest L. Bentzien for Respondent.

NOURSE, P. J.—Plaintiff sued for a declaration of interest in certain real and personal property asking that an undivided one-half interest therein be awarded her on the theory that said property was community.

The parties were formerly husband and wife having been married in December, 1936. They were divorced by a consent decree entered in the State of Nevada on January 17, 1944. Prior to the marriage the defendant purchased a piece of realty in the county of Santa Clara. The total consideration agreed to be paid was $2,200 of which defendant paid approximately $325 before the marriage. Also before the marriage defendant improved the property to the extent of $700. A deed of trust covering the balance due on the purchase price was renegotiated after the marriage and the balance was paid by the defendant from his earnings while the marriage was still in force. Defendant contended that prior to or pending the divorce proceedings plaintiff urged defendant to permit her to obtain a divorce without contest and promised him in writing that she would make no claim upon the property in suit. In her complaint for divorce she alleged that there was no community property; the answer of the husband admitted that fact and he made no contest. Subsequent to the divorce and in reliance upon this assurance defendant remodeled and improved the property at an approximate cost of $3,000.

The trial court found that the real property was the separate property of the defendant since the character of the property is to be determined by its status as of the time of its acquisition. The court's award to plaintiff of a community interest in certain designated personal property is not contested herein.

The principal question argued upon this appeal is whether the rule relied upon by the trial court that the character of property is to be determined by its status as of the time of its acquisition is applicable here. Respondent relies upon *Siberell* v. *Siberell*, 214 Cal. 767, 770 [7 P.2d 1003]; *In re Miller*, 31 Cal.2d 191, 197 [187 P.2d 722]; *Palen* v. *Palen*, 28 Cal.App.2d 602 [83 P.2d 36]; *Kenny* v. *Kenny*, 97 Cal. App.2d 60, 65 [217 P.2d 151], and similar cases which support this general statement that the character of property, whether separate or community, is to be determined by the status existing at the time it was acquired. There seems to be a uniformity of decision in support of the rule stated. 11 American Jurisprudence, page 187, states the rule supported by numerous citations. There it is said: "The status of property as separate or community property is fixed as of the time when it is acquired. The word 'acquired' contemplates the inception of title, and as a general rule the character of the title depends upon the existence or nonexistence of the marriage at the time of the incipiency of the right by virtue of which the title is finally extended and perfected; the title when so extended and perfected relates back to that time. Stated in another way, the status of title, as belonging to one estate or the other, is determined by the status of the original right, subsequently matured into full title. Under this rule, property to which one spouse has acquired an equitable right before marriage is separate property, though such right is not perfected until after marriage. Thus, property purchased by one spouse before marriage is separate property, though the deed therefor is not executed and delivered until after marriage, and this is true though a part of the purchase price is not paid until after marriage, in the absence of a showing that any part of the balance was paid with community funds; in any event it would be community property only to the extent and in the proportion that the purchase price is contributed by the community." Accordingly, the fact that the title to land owned by a man at the time of his marriage was not perfected by a conveyance from the source of paramount title until

after that event does not destroy its character as a separate estate. Property bought before the marriage under a suspensive condition by one of the spouses remains his or her separate property, though the condition is realized after the marriage."

Appellant relies on *Vieux* v. *Vieux*, 80 Cal.App. 222 [251 P. 640]; *Maskuns* v. *Maskuns*, 93 Cal.App. 27 [268 P. 1093]; *Estate of Ball*, 92 Cal.App.2d 93 [206 P.2d 1111]; *Berniker* v. *Berniker*, 30 Cal.2d 439 [182 P.2d 557], and similar cases all to the same purport (except the Berniker case) holding that when the husband before marriage had merely an inchoate right, such as a contract to purchase, and during coverture made the purchase out of community funds the property so acquired became community property. In the Berniker case the property was acquired some 10 years after the marriage and during coverture at public sale for the benefit of creditors. The holding in that case was that though the father of the husband had taken title at such sale in his name he held as trustee for the community, the wife having testified that she saw her husband hand the purchase price to his father and that such money came from the community earnings. ■ No other authorities are cited which are directly in point, but the fairer rule would appear to be that stated in the paragraph heretofore quoted from American Jurisprudence that, in the absence of a contrary agreement, the community interest runs to the proportion of the purchase price contributed by the community.

■ However, if we may assume that a community interest was created by the use of community earnings, there remains the question whether such interest was waived by the wife by her express agreement before the divorce, supported by her allegation in the complaint for divorce that she claimed no such interest. By letters addressed to respondent urging him not to contest her action for a divorce she stated that she made no claim to any of the property and would seek no financial award of any kind. In her complaint filed in the Nevada court she alleged that there was no community property.

This issue was well pleaded in defendant's answer where he alleged: "That plaintiff herein, formerly Florence E. Rowe, requested that defendant, Philip James Rowe, consent to a divorce action so that plaintiff could have her freedom; that said Florence E. Rowe promised defendant, Philip James Rowe, that she would not seek support money and that she

would not set forth any claim to any of the property then held by the parties.

"That relying on the representations of plaintiff the defendant consented to the divorce."

The evidence on this issue is not altogether satisfactory but it is sufficient to have supported a finding of estoppel by contract. It is beyond question that the respondent relied on such representations and consented to the divorce because of them. On her first cross-examination the appellant denied that any agreement as to the property was made prior to the divorce. Being recalled she testified:

"Q. Did you ever make a statement to Mr. Rowe, your husband, that you didn't want anything from him at any time, either prior to or after you got the divorce?

. . . . . . . . . . . . . . . . . . .

"A. Yes, I did tell him that I didn't want anything.

"Q. When, and where? A. Well, it would be in letters, because I didn't see him; but I don't know when.

"Q. After the divorce? A. No, before the divorce.

"Q. You told him you didn't want anything prior to the time you got the divorce? A. That's right."

Later on, being again recalled for cross-examination, she denied all this testimony. The respondent testified that he had received from appellant three separate letters urging him not to contest the divorce and assuring him that she would make no claim to property, suit money or counsel fees. A similar letter had been sent by her Nevada attorney urging a default. This was followed by the allegation in appellant's complaint for divorce that there was no community property and respondent's answer admitting that fact. Appellant first testified that she sent such letters to the respondent and later she denied it.

A significant circumstance supporting respondent's claim is that the Nevada divorce was obtained on January 17, 1944; that her complaint in this action was filed on November 7, 1946, and that between those periods the respondent had improved the real property with his separate funds to the extent of $3,000. Manifestly if he had known that appellant was going to assert a claim against that property he could have invested the $3,000 to a much better advantage.

The trial of this issue went upon the wrong course. Counsel for appellant insisted that the issue was whether the Nevada court had jurisdiction to test the question of property rights and the trial court agreed with him. An opinion was filed

treating the question of jurisdiction, but no finding was made on the facts relating to the plea of estoppel. Though denying her letters (which she knew had been lost), appellant could not deny the allegations of her complaint and her verification of the fact that "there was no community property." Respondent's answer, admitting that allegation, confirmed a contract between the parties that they held no community property—not merely within the State of Nevada but none at any place.

It is in evidence that the husband's answer in the divorce case was prepared by Nevada counsel unknown to him and so, presumably, at the suggestion of the wife. There can be no question therefore of misunderstanding or overreaching. The parties knew what they wanted and acted accordingly. They followed a rule of law which has been frequently announced in recent decisions—that husband and wife may orally agree to transmute their property from community to separate or from separate to community. The leading case so holding is *Tomaier* v. *Tomaier,* 23 Cal.2d 754, 757, 758 [146 P.2d 905], and it has been consistently followed down to *Estate of Wieling,* 37 Cal.2d 106 [230 P.2d 808].

It was suggested in the oral argument that there was no express agreement of waiver. We cannot follow the suggestion. But, even so an express agreement is not necessary where one party has performed all that he promises to perform and the other accepts all the benefits. In the Wieling case (*supra*) there was less direct evidence of a contract than there is here. There the husband and wife purchased with community funds seven parcels of realty taking title in the name of the husband alone. Then the wife stated that she was going to purchase additional lots in her own name until she had acquired an equal number (or equal value) then "I am going to have half of it in my name and half in your name, and we each have our own property. . . ." To this the husband demurred saying, "Why wasn't it good enough to keep all of it in the community?" Nothing further was said or done by the husband indicating assent to the plan. The wife purchased four new parcels taking title in her own name. Both died at about the same time. In a contest by the heirs, the Supreme Court held that the evidence was sufficient to support the conclusion that the parties had orally agreed to transmute their community property into separate property. The wife's heirs were then held estopped from claiming a community interest in the

seven lots first purchased, but they were awarded a judgment holding that the four lots taken in the wife's name were her separate property because of this "agreement."

We are not concerned here with the question of the power of the Nevada court to litigate the property rights in this state. ■ We treat the allegation in the divorce complaint as an affirmance under oath of appellant's former agreement waiving all community interest, and respondent's default as an acceptance of the offer and hence a contract of transmutation or waiver.

The evidence is such that if a finding had been made it should have supported respondent's plea of estoppel. It would not advantage appellant to reverse the judgment for such a finding in view of the court's disposition of the personal property.

Judgment affirmed.

Goodell, J., and Jones, J. pro tem., concurred.