[Civ. No. 17955.   First Dist., Div. One.   Aug. 12, 1958.]

Estate of ETHEL M. BERNATAS, Deceased.   JOSEPH BERNATAS, Appellant, v. GLADYS L. HONNERT et al., Respondents.

J. Elwood Andresen for Appellant.

Charles O. Morgan, Jr., for Respondents.

BRAY, J.—The administrator with the will annexed appeals from the order settling final account and decree of distribution.

## QUESTIONS PRESENTED[1]

1. The correctness of the distribution of the real property which in turn depends upon the finding that it was separate property.

2. Is the restriction on the life estate of Joseph C. Bernatas "as long as he wishes while he is alone" void for indefiniteness?

## EVIDENCE

Appellant, in addition to being administrator with the will annexed, was the husband of decedent. She left a holographic will dated July 20, 1948, in which she stated that she wanted "my home at 531 Hearst Ave S F to go to my niece VIRGINIA F. CROCKETT, my husband JOSEPH C. BERNATAS to live in it as long as he wishes while he is alone." The will then disposed of 25 shares of telephone stock, 5 shares to Joseph and 5 shares each to four other named persons.

In his final account and petition for distribution appellant alleged that the real property was community property and should be distributed half to him outright and half to Virginia F. Crockett subject to a life estate in him. Gladys L. Honnert, sister of decedent, Virginia F. Crockett, niece, and Donald E. Honnert, nephew, filed an objection, alleging that the real property was the separate property of decedent and should be distributed to Virginia F. Crockett subject to a limited life estate in Joseph. The court found that the real property was the separate property of decedent and distributed it to Virginia with the right of Joseph C. Bernatas to live in the same "as long as he is alone."

## 1. *Separate Property.*

The property belonged to decedent prior to her marriage to Joseph. It had been held in joint tenancy between her and her former husband. After his death and on December 1, 1945, she married Joseph. In 1952 under her name of Bernatas decedent executed an affidavit for the termination of the joint tenancy. Although the assessor assessed the prop-

[1]Appellant also complains of an error of $778.76 in the credits allowed him. Respondents concede this error and that the order and decree should be corrected as hereinafter set forth. This court has such power. See *Estate of Machado*, 186 Cal. 246, 252 [199 P. 505].

erty to her in that name, the title remained in her former name. Joseph testified that ''She always stated, 'It is our home, belonging to ourselves.' '' He testified further that a month or two after the marriage he and decedent discussed buying a new home. But she said '' 'Why buy a new home? Let's fix this one up. We would be better off.' '' They thereupon renovated the house and installed a new roof and furnace. At the time of the marriage the property was subject to an F.H.A. loan of $1,419.28. The loan and cost of renovating were paid for out of community funds. Joseph knew that the property remained in decedent's name. He testified ''when she stated her excuse, that it cost so much money to have it transferred,'' he did not know that she had terminated the joint tenancy, nor that she had made the will until after her death. About 1950 they had bought in joint tenancy a small summer home in the country. Virginia Crockett testified to a conversation by decedent about a month before her death at which Joseph was present. During it decedent stated that the property was to be Virginia's home after her death. Joseph denied that there was any such conversation.[2]

Presumptively, under Civil Code, section 162, as the property stood in decedent's name it was her separate property. ▇ However, a wife's separate property may be transmuted into community property by a simple oral agreement between husband and wife that it shall be such. (*Estate of Cummins* (1955), 130 Cal.App.2d 821, 829 [280 P.2d 128].) Moreover, *in re* such an oral agreement, the testimony of the husband, *if believed,* is sufficient to support a finding adverse to the record title. (*Estate of Cesare* (1955), 130 Cal.App.2d 557, 568 [279 P.2d 607].)

It is appellant's contention that his testimony plus the fact that the renovation costs and the F.H.A. loan were paid by community funds compels a finding in his favor. ▇ While it is the general rule that uncontradicted and unimpeached testimony of a witness tending to establish an issuable fact may not be disregarded and should be accepted to establish the fact unless it is inherently improbable (see *Tillotson* v. *Findley* (1927), 87 Cal.App. 654, 662 [262 P. 438]; *Lissauer*

[2]Contrary to respondents' contention the contents of the will may not be considered in determining the character of the property. It is well settled that declarations in a will, unknown to the other spouse, are inadmissible to prove that the property is separate property. (*Rowe* v. *Hibernia Sav. & Loan Society* (1901), 134 Cal. 403, 407 [66 P. 569]; *Estate of McCarthy*, 127 Cal.App. 80, 86 [15 P.2d 223]; *Logan* v. *Forster*, 114 Cal.App.2d 587, 602 [250 P.2d 730].)

v. *Union Bank & Trust Co.* (1941), 45 Cal.App.2d 468, 472 [114 P.2d 367], there are exceptions to the rule. ██ Thus the most positive testimony may be contradicted by circumstances in evidence which may satisfy the trial court of its fallacy and the court may reject that testimony even though the witness is not discredited by direct testimony. (*Jenks* v. *Carey* (1933), 136 Cal.App. 80, 85 [28 P.2d 91]; *Estate of Tompkins* (1932), 123 Cal.App. 670 [11 P.2d 886].) *In Estate of Horn* (1951), 102 Cal.App.2d 635, 642 [228 P.2d 99] the court pointed out that the fact that the only person who could successfully contradict the husband's testimony is dead, may be taken into consideration in determining the truth of his testimony.

██ In spite of appellant's contention that the evidence in his behalf was conclusive, it was merely conflicting. Opposed to his claim of an oral agreement was the presumption that the property acquired by decedent before marriage and remaining in her name was her separate property, the fact that on terminating the joint tenancy long after her marriage she did not include appellant's name in the title to the property, and the other circumstances of the case. The trial court resolved this conflict against appellant. Its findings are supported by the evidence.

██ Appellant contends that in any event he is entitled to a community interest in the property *pro tanto* to the amount of the community funds used for the renovation and for payment of the loan. He relies upon *Garten* v. *Garten* (1956), 140 Cal.App.2d 489, 493-494 [295 P.2d 23] : ''Where payments are made with community funds on real property owned by one spouse before marriage 'the rule developed through the decisions in California gives to the community a *pro tanto* community property interest in such property in the ratio that the payments on the purchase price with community funds bear to the payments made with separate funds.['] (*Forbes* v. *Forbes*, 118 Cal.App.2d 324, 325 [257 P.2d 721]; *Giacomazzi* v. *Rowe*, 109 Cal.App.2d 498, 501 [240 P.2d 1020].) The rule would, of course, equally apply where the payments were made on an encumbrance placed on property acquired by one of the parties prior to marriage. (*Giacomazzi* v. *Rowe, supra.*)'' However, the rule stated there is too broad as it applies, in the absence of an agreement between the spouses, only to payments by the husband from community funds made on the husband's separate property. As said in

*Dunn* v. *Mullan,* 211 Cal. 583, 590 [296 P. 604, 77 A.L.R. 1015] : ". . . we think it may be presumed that if a husband expended community funds for the benefit of his wife's separate property he intended, in the absence of any evidence of a contrary intent, such improvements or benefits to be a gift, and that he made such expenditures without expectation of repayment.

"This conclusion is not impaired by the fact that in some of the community property states it has been held generally that the separate estate of one member of the community must reimburse the community for improvements made in good faith upon the separate lands of either. (*Rice* v. *Rice,* 21 Tex. 58; *Sims* v. *Billington,* 50 La.Ann. 968 [24 So. 637] ; *Legg* v. *Legg,* 34 Wash. 132 [75 P. 130].) In California a distinction is made between the case where, as here, the husband has improved his wife's lands with community funds and where he has improved his own lands with community funds. In the former case he is presumed to have intended a gift. In the latter case a right of reimbursement is granted to the wife upon the theory that to permit a husband to appropriate the community property under his management to his own separate use operates as a constructive fraud upon his wife. (McKay on Community Property, 2d ed., § 1017, p. 661.)"

Neither the Garten case nor the Forbes case from which the above quotation was taken dealt with payments made by the husband from community funds on the *wife's* separate property. Both cases dealt with community payments made on the *husband's* separate property. Moreover, the cases upon which the Forbes statement was based, likewise did not deal with community payments on the *wife's* property. *Vieux* v. *Vieux,* 80 Cal.App. 222 [251 P. 640], dealt only with community payments on the husband's separate property. *Maskuns* v. *Maskuns,* 93 Cal.App. 27 [268 P. 1093], *Estate of Caswell,* 105 Cal.App. 475 [288 P. 102], and *Giacomazzi* v. *Rowe,* 109 Cal.App.2d 498 [240 P.2d 1020], dealt with situations in which the spouses commingled the separate funds of each with community funds and applied the commingled funds in payment of the balance due upon property bought by the husband prior to marriage. The court held that by reason of the commingling of the funds applied to the purchase price a half interest in the property was the community interest of the spouses. *Estate of Ball,* 92 Cal.App.2d 93 [206 P.2d 1111], dealt with shares of stock standing in the husband's name before marriage and paid for thereafter by community funds.

Thus none of the cases cited as supporting the rule dealt with the situation of community funds applied to the wife's separate property. Moreover, none of the cited cases discussed the rule above quoted from *Dunn* v. *Mullan, supra,* 211 Cal. 583. As said in *Estate of Turner,* 35 Cal.App.2d 576, 579 [96 P.2d 363] : "All of the California cases arose out of payments made by the husband out of community funds for improvements of his wife's paraphernal property and no lien is held to have been created in the husband's favor as against the community estate. (*Dunn* v. *Mullan,* 211 Cal. 583 [296 P. 604, 77 A.L.R. 1015], and authorities cited.) But in making such expenditures the husband is presumed to have made a gift to his wife. It is presumed that it was his intention 'to advance the money for the benefit of his wife's estate and that it was to accrue to her interest.' (*Carlson* v. *Carlson,* 10 Cal.App. 300 [101 P. 923].) The reasons given for this holding are two, *viz.*: (1) he is presumed to have intended a gift because (2) he had authority to control the disposition of community funds. (*Dunn* v. *Mullan, supra.*)" The court then refers to the statement in 31 Corpus Juris Secundum, 1170, to the effect that the general rule is that the community has a claim against the separate estate of either spouse for expenses properly incurred in behalf of such estate, and states (p. 579): "This is clearly the rule in all cases involving improvements made on a separate estate out of community funds except cases mentioned in the next preceding paragraph in which the husband makes improvements on the wife's paraphernal property." (See also *Spreng* v. *Spreng,* 119 Cal.App. 155, 159 [6 P.2d 104] ; *Callnon* v. *Callnon,* 7 Cal.App.2d 676, 680-681 [46 P.2d 988] ; *Tompkins* v. *Bishop,* 94 Cal.App.2d 546, 550 [211 P.2d 14] ; *Cullen* v. *Spremo,* 142 Cal.App.2d 225, 229 [298 P.2d 579] ; *Estate of Inman,* 148 Cal.App.2d 952, 958 [307 P.2d 953] ; see also Armstrong, California Family Law, pp. 616, 617, 618.)

■ Thus, it is clear that in California community payments made by the husband on the wife's separate property are presumed, in the absence of an agreement to the contrary, to constitute a gift to her. Here the court found that there was no agreement. Hence Joseph is only entitled to the life estate in the home left him by decedent's will.

2. *Life Estate Limitation.*

Following the terms of the will the court distributed the home to Virginia Crockett "with the right of JOSEPH C.

BERNATAS to live in the same as long as he is alone.'' Appellant contends that this language is so vague and indefinite as to be of no legal effect and hence that he is entitled to an unlimited life estate. He contends that construed literally Joseph could not have visitors or a pet in the home.

In giving appellant the right ''to live in it [the property] as long as he wishes,'' a life estate was created. See 31 Cal. Jur.2d 312; Tiffany on Real Property (3d ed.) vol. 1, p. 72. But the problem is what kind of a life estate was it in view of the use of the words ''while he is alone.'' If such a phrase is construed to mean as long as appellant remains unmarried or the decedent's widower, then appellant was devised a determinable life estate. See *In re Reinhardt* (1887), 74 Cal. 365 [16 P. 13]; Tiffany on Real Property (3d ed.) vol. 1, p. 80.

In the instant case the trial court did not, either in the findings or the final decree, expressly state the interest which appellant was to receive, but instead repeated in effect the phraseology used by the decedent. However, during the hearing the trial court did seem to indicate that he considered that appellant could only live in the property as long as he did not marry.

The cardinal principle in construing wills is to ascertain the intention of the testator as expressed therein. In seeking this intention, the will should be read '' 'from its four corners' '' and all parts of the document should be construed in relation to one another so as to form one consistent whole. (*Estate of Soulie* (1945), 72 Cal.App.2d 332, 335 [164 P.2d 565].) The language used is to be given its plain, ordinary meaning. (*Estate of Mitchell* (1938), 10 Cal.2d 628 [75 P.2d 1048, 76 P.2d 1184]. And doubtful words are to be construed if reasonably possible so as to give the effect intended by the testator or are to be given a construction which will give them operative effect rather than cause them to be inoperative. (*Estate of Carrillo* (1921), 187 Cal. 597, 601 [203 P. 104]; *Estate of Spence* (1943), 57 Cal.App.2d 922, 926 [135 P.2d 419].)

In the instant case, following the above rules, a reasonable construction of the will indicates that the testatrix intended that appellant was to receive a life estate determinable upon his remarriage. ''[W]hile he is alone'' is more reasonably interpreted to refer to remarriage rather than to complete solitude as contended by appellant.

The order and decree is hereby modified as follows: by striking from the second paragraph thereof the words and

figures "a balance of FIFTEEN THOUSAND TWO HUNDRED SEVEN AND 43/100 DOLLARS ($15,207.43) of which FOUR THOUSAND NINE HUNDRED SEVEN AND 43/100 DOLLARS ($4,907.43)" and substituting therefor "a balance of FIFTEEN THOUSAND FIFTY SEVEN AND 43/100 DOLLARS ($15,057.43) of which FOUR THOUSAND ONE HUNDRED TWENTY EIGHT AND 67/100 DOLLARS ($4,128.67)." As so modified the order and decree is affirmed. Respondents are awarded costs.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 10, 1958.