50 Cal.Rptr. 339]

[Civ. No. 28938.   Second Dist., Div. Two.   Mar. 21, 1966.]

Estate of ELLA C. ARMSTRONG, an Incompetent. GLADYS G. SEAVEY, as Executrix, etc., Petitioner and Respondent, v. NETTIE KUHLKEN et al., Claimants and Appellants.

[Civ. No. 28939.   Second Dist., Div. Two.   Mar. 21, 1966.]

Estate of OSCAR B. ARMSTRONG, Deceased. GLADYS G. SEAVEY, as Executrix, etc., Petitioner and Appellant, v. BANK OF AMERICA as Executor, etc., et al., Claimants and Respondents.

(Consolidated Appeals.)

Lauren M. Handley, Andrew P. Costelli and Ivan L. Smith for Claimants and Appellants in No. 28938 and for Claimants and Respondents in No. 28939.

Jess F. High and Edward L. Lascher for Petitioner and Respondent in No. 28938 and for Petitioner and Appellant in No. 28939.

ROTH, P. J.—On April 12, 1963, Oscar B. Armstrong (Oscar) died. Gladys Seavey (appellant), daughter of the deceased and executrix of his estate, appeals from a decree determining interests in Oscar's estate pursuant to a petition she filed under Probate Code, sections 1080 and 1081, on November 13, 1963, requesting such a determination.

Respondents Nettie Kuhlken, Stephen Briening, Edward Briening and Geraldine Jordhay, all relatives of Ella C. Armstrong (Ella), Oscar's wife who died approximately two months after Oscar, filed petitions in April 1964 in accordance with the aforementioned sections, claiming an interest in Oscar's estate as distributees under the will of Oscar, and also as heirs and residuary legatees under Ella's will. Respondent Bank of America became a party to the proceeding as executor of Ella's decedent's estate.

The decree, filed August 3, 1964, finds all property of Oscar's estate to be the separate property of Oscar's deceased wife, Ella, and orders appellant to "transfer and deliver to Bank of America . . . all assets of any kind or nature which [appellant] is attempting to administer in this estate, to be administered by said Bank as Executor of the Estate of Ella C. Armstrong, deceased; . . ."

On December 11, 1962, prior to the death of the Armstrongs, Ella was declared incompetent and appellant was appointed guardian of her person and estate. Subsequently, Oscar filed suit against appellant as guardian of Ella, requesting a declaration by the court of the status of their property. On April 8, 1963, four days before Oscar's death, a written stipulation was executed stating that the parties to the suit agreed that all property owned by both or either of the parties was community property and further, that the court might enter judgment in the guardianship estate to that effect. No such judgment was ever entered. Appellant did not in her capacity as guardian of Ella seek or obtain permission from the court acting in the guardianship to enter into such a stipulation. No proceedings were taken by Ella as executrix of Oscar's estate, he having died four days after the stipulation to have a judgment entered on the stipulation.

On April 12, 1963, four days after the execution of the foregoing stipulation, Oscar died. His will was admitted to probate on May 17, 1963, and on said date appellant, the principal beneficiary of his will, was named executrix.

On June 14, 1963, Ella died. Her will, under which appellant took nothing, was admitted to probate and respondent Bank of America was named executor.

On September 5, 1963, approximately four months after appellant had been appointed executrix in Oscar's estate, and after the appointment of Bank of America as executor of Ella's estate,[1] appellant, as guardian of Ella, filed in the guardianship proceeding a first and final accounting. The accounting and report itemized Ella's assets which consisted primarily of real property and bank accounts and a few items of personal property, and described her interest therein as "an undivided one-half community interest" totaling $72,225.96. In an uncontested ex parte proceeding, after proper notice had been given, the probate court, without a hearing, entered an order settling the account of the incompetent's estate as follows: "It is Ordered, Adjudged and Decreed by the Court that said guardian has in her possession belonging to said estate . . . a balance of $72,225.96, of which $1,290.08 is in cash, and said account and report is hereby approved, allowed and settled accordingly; . . ." After paying certain fees, appellant was ordered to turn over the balance of the

---

[1] The record does not disclose the date of the admission of Ella's will to probate and the appointment of the executor of her estate. Presumably, however, it occurred promptly after her death since there was no contest of the will or the appointment of her personal representative.

assets to the personal representative of Ella Armstrong, deceased, for probate administration, and upon filing a receipt therefor, appellant was to be discharged.[2] From this order, respondents Nettie Kuhlken, Stephen Briening and Bank of America appeal. This appeal has been consolidated with the appeal of appellant in the Estate of Oscar. It is also before us.

On November 6, 1963, appellant filed an inventory and appraisement as executrix of Oscar's estate. The assets inventoried were identical to those included in the guardianship report but were itemized at full rather than half value.

As noted above, appellant thereafter petitioned the court to determine all interests in Oscar's estate. Respondents filed statements declaring their interest in the estate on April 1 and April 9, 1964. After a trial on the status of the property, the court, on August 3, 1964, filed findings of fact and conclusions of law, and issued a decree determining interests in the estate. The decree states in part: "That all property standing in the name of Ella C. Armstrong on December 11, 1962, the date of the Order appointing Gladys G. Seavey as Guardian of her Estate, as an incompetent person, was on said date and at all times prior thereto had been the sole and separate property of Ella C. Armstrong, and her husband, Oscar B. Armstrong did not at any time have any right, title, or interest therein, as being the community property of the spouses or otherwise; That all of said property was properly subject to administration in the Estate of said incompetent person, although said guardian attempted to administer a fraction thereof only, and on the death of said ward, the whole thereof, whether administered in the guardianship proceedings or not, was thereafter distributable to the estate of the deceased ward, to wit: Bank of America National Trust and Savings Association; as Executor thereof; . . ."

The property listed in the decree as being the separate property of Ella was identical to the property inventoried by appellant both as executrix of Oscar's estate and as guardian of Ella.

Preliminarily we deal first with appellant's contention that respondents Nettie Kuhlken, Stephen Briening and Bank of America may not appeal from the order settling the final

---

[2]The court in the proceedings in Oscar's estate, found that appellant had failed to comply with the order in this respect. An order of final discharge in the guardianship proceeding was filed November 6, 1963, but was vacated on the court's own motion on November 20, 1963, one week after appellant filed her petition to determine heirship in her father's estate.

account in the guardianship proceedings since they were not parties to that proceeding. ■ While such an order is appealable (Prob. Code, § 1630), Code of Civil Procedure, section 938 requires an appellant to be a "party aggrieved." Whether respondents are such persons is a question not without difficulty. One line of cases represented by *Estate of McDermott,* 127 Cal. 450 [59 P. 783] ; *Estate of McDougald,* 143 Cal. 476 [77 P. 443] ; *Eggert* v. *Pacific States Savings & Loan Co.,* 20 Cal.2d 199 [124 P.2d 815] ; *Estate of Silver,* 92 Cal.App.2d 173 [206 P.2d 895] ; and *Rose* v. *Rose,* 110 Cal. App.2d 812 [243 P.2d 578], hold that a person entitled to appeal must be a party of record and move to vacate the ju'dgment or otherwise oppose the judgment appealed from below. None of the persons mentioned were parties to the record in the guardianship estate an'd no such motion was made. Another line of authority, represented by *Estate of Benner,* 155 Cal. 153, 154 [99 P. 715] ; *Estate of Levy,* 4 Cal.2d 223, 226 [48 P.2d 675] ; *Guardianship of Copsey,* 10 Cal.2d 748 [76 P.2d 691] ; *Estate of Moran,* 122 Cal.App.2d 167 [264 P.2d 598] ; and *Estate of Sloan,* 222 Cal.App.2d 283, 291-292 [35 Cal.Rptr. 167], hold that the right to appeal is determined solely by whether the appellant is "aggrieve'd." *Estate of Sloan, supra,* the most recent of the cases in either line, distinguishes those decisions requiring appellant to be a party of record as applying the rule in fact only to persons who were not *aggrieved.*

■ It is clear from the record that the appeal from the guardianship order was taken to prevent its determination of the character of Ella Armstrong's property from becoming final and binding on the proceedings in Oscar's estate. Appellant does not seriously contend, however, that the guardianship order was res judicata or in any way collaterally estoppcd the court in Oscar's estate from 'determining the community or separate nature of his assets. It is settled by many decisions that res judicata is a defense which must be raised and determined in the pertinent action, and does not go to the jurisdiction of the court. (1 Witkin, Cal. Procedure (1954) 323 and cases cited.) Appellant did not raise this defense in the proceeding in Oscar's estate, nor was the guar'dianship order offered into evidence. The order could not, therefore, bind the court determining interests in the *Estate of Oscar.*

Appellant was ordered, both as guardian of Ella's estate and executrix of Oscar's estate to turn all assets over to the Bank of America as executor of Ella. The guardianship estate is now a shell, existing only to insure that whatever assets

of the ward in the possession of the guardian are transmitted to the ward's decedent's estate. Absent any binding effect of the guardianship order, respondents Kuhlken, Stephen Briening and Bank of America, appellants in the Estate of Ella C. Armstrong, an incompetent, are not aggrieved; the decree in no way adversely affects their interests. (See *Estate of Sloan, supra,* at p. 291.) Since they have not made themselves a party to the proceedings by moving to vacate the order from which they appeal, and are in no wise aggrieved by the order, their appeal is dismissed.

We turn now to the primary appeal from the decree in the estate of Oscar. Appellant contends that the court erred in deciding the nature of the assets in the estate, since that matter was beyond the scope of any controversy in the heirship proceedings. Prior to trial, however, appellant submitted a lengthy trial brief *invoking* the jurisdiction of the court, and citing cases to support the view that the court, indeed, could determine the nature of the property. In argument to the court, counsel for appellant stated: "I think we are all satisfied, of course, the Probate Court is the proper court to determine, under a petition to determine interests in an estate, whether it is separate or community." ■ Assuming *arguendo* that the community or separate nature of the property was beyond the scope of the issues, appellant, in direct contradiction of her position in the court below, cannot be allowed to raise that argument here. To do so, would be to ignore the line of authorities holding that a party is estopped from asserting error on appeal which was induced by his own conduct. (See *Abbott* v. *Cavalli,* 114 Cal.App. 379, 383 [300 P. 67] ; *Mathieson* v. *Wallace,* 124 Cal.App. 25, 28 [12 P.2d 99] ; *Collins* v. *Graves,* 17 Cal.App.2d 288, 297 [61 P.2d 1198] ; *Noble* v. *Miles,* 129 Cal.App. 724, 727 [19 P.2d 265] ; *Cummings* v. *Cummings,* 97 Cal.App. 144, 149 [275 P. 245] ; *Merrill* v. *Kohlberg,* 29 Cal.App. 382, 386 [155 P. 824].)

Appellant also contends that the stipulation of April 8, 1963, in the suit between Oscar and appellant as guardian of Ella, that their property was community and that judgment to that effect should be entered in the guardianship estate, although never entered, is binding as an agreement between the spouses.

Section 1530a of the Probate Code provides: "The guardian, *with the approval of the court,* may compromise, compound or settle any claim or demand against the estate or any suit

brought by or against the guardian as such, by the transfer of specific assets of the estate, or otherwise. . . . To obtain such approval or authorization, the guardian shall file a verified petition with the clerk showing the advantage of the compromise . . . [or] settlement. . . .'' (Italics added.)

█ No authorization from the court was ever obtained by appellant as guardian. The court in the proceedings in Oscar's estate found that the stipulation ''was patently an instrument against the interest of [appellant's] ward, was never at any time presented to the Court in the matter of said guardianship, and the Court finds that it is not controlling upon the court.'' We think the court acted properly in disregarding the stipulation.

█ In *Berry* v. *Chaplin*, 74 Cal.App.2d 652 [169 P.2d 442], the guardian *ad litem* of a minor child stipulated with the opposing party that the filiation proceeding commenced by the guardian on behalf of her ward would be dismissed if blood tests indicated that the defendant was not the father. In refusing to be bound by the stipulation, the court stated at page 657: ''The power of a guardian *ad litem* in such an action is not unlimited. In effect the court is the guardian, and the person named as guardian *ad litem* is an officer of the court appointing him and is the agent of the court. . . . A minor, who must of necessity appear by his guardian, is not bound by the admissions of the guardian which mean the sacrifice or giving away of the ward's property. . . . The court may set aside or disregard concessions of the guardian which have not already been judicially approved and which are shown to the court to have been improvidently made.'' This language is equally applicable to the actions of a guardian of an incompetent.

Appellant argues vigorously that the evidence does not support the finding and judgment of the court that all property inventoried was the separate property of the wife and belonged in her decedent's estate. That we must affirm the judgment on this ground, if there is any substantial evidence supporting it, is a proposition too well established to need citation of authority.

█ We have examined the record and find judgment is supported by substantial evidence. No useful purpose would be served by a detailed dissection of the evidence presented. An outline is sufficient.

Ella Armstrong had acquired several parcels of property as her separate property through a settlement agreement in a previous marriage and an inheritance from her mother's

estate. During the course of her marriage to Oscar, which lasted over half a century, she dealt extensively in real property almost exclusively in her own name. For a period of time the Armstrong family lived in a hotel which had been acquired by Ella prior to her marriage to Oscar. This hotel was managed by Ella and maintained physically by Oscar.

During the marriage, Oscar ran a restaurant, worked for 30 years in the Postal Department, worked as a gardener, and finally, ran a nursery of his own. While Ella was managing the financial affairs of the community and her own properties, Oscar would provide much of the labor required in maintaining and improving these properties. At the time of Oscar's death, the assets eventually inventoried in his estate, consisted primarily of real properties and bank accounts, all standing in Ella's name.

Considerable documentary evidence was introduced showing the manner in which Ella acquired and disposed of her properties. Suffice it to say that this evidence and the inferences which could be drawn therefrom, demonstrated to the satisfaction of the court that the assets in dispute were derived directly from the rents, issues and profits of Ella's separate property.

Property acquired prior to marriage or by inheritance is the separate property of the wife. (Civ. Code, § 162.) So is the property acquired with the rents, issues and profits of her separate property. (Civ. Code, § 162.) In addition, property, real or personal, acquired by a married woman in writing, is presumed her separate property. (Civ. Code, § 164.) ■ Admittedly, where one spouse has a separate property business that enhances in value due to the spouse's labor and skills, an apportionment may be made attributing to the community that portion of the increase in value resulting from the spouse's community labors. (See *Todd* v. *McColgan*, 89 Cal.App.2d 509, 514 [201 P.2d 414]; *Logan* v. *Forster*, 114 Cal.App.2d 587, 599 [250 P.2d 730].)

Appellant introduced no evidence to show that such an apportionment should, or could be made. Appellant relies on the personal efforts of Oscar in maintaining the properties owned by Ella, to prove that these properties were considered community by the spouses. There is room for such an inference, but no such inference is compelled as a matter of law. The fact that Oscar contributed time and skill in the separate property business of the wife, gives him no interest in the proceeds therefrom nor does it transmute the status of owner-

ship from separate to community property. (*Gray* v. *Perlis,* 76 Cal.App.511, 515 [245 P. 221].) The cases hold that where the husband uses community property *funds* to improve separate property of the wife, it is presumed a gift to her. (*Dunn* v. *Mullan,* 211 Cal. 583, 589 [296 P. 604, 77 A.L.R. 1015]; *Estate of Bernatas,* 162 Cal.App.2d 693, 697 [328 P.2d 539]; *Kershman* v. *Kershman,* 192 Cal.App.2d 18, 22 [13 Cal.Rptr. 288].) By analogy, where the husband contributes time, skill and effort to such improvement in lieu of community funds, the same presumption may apply.

Finally, appellant contends that the trial court erroneously excluded evidence offered by appellant; that Ella had on various occasions made declarations to her and the family accountant that the property in dispute was ''our'' property. Appellant further offered to prove other declarations of Ella which would tend to establish the mutual intention of the spouses that the property be community. Both offers were rejected.

Assuming the refusal to admit such testimony was error, (Code Civ. Proc., § 1870, subd. (4) ; *Estate of Cummins,* 130 Cal.App.2d 821, 829 [280 P.2d 128]), we think it was nonprejudicial. Oral declarations of a party whose lips are sealed by death is evidence of the weakest kind and should be received with caution. (*Estate of Zlaket,* 180 Cal.App.2d 553, 560 [4 Cal.Rptr. 450], and authorities cited.) It is particularly unconvincing when the declaration is presented through a witness with a substantial pecuniary interest in the probative effect of the decedent's declaration. We cannot say that this testimony, had it been admitted, would in all probability have affected the outcome of the case. (Code Civ. Proc., § 475; *Tupman* v. *Haberkern,* 208 Cal. 256, 263 [280 P. 970] ; *Fernandez* v. *Di Salvo Appliance Co.,* 179 Cal.App.2d 240, 245 [3 Cal.Rptr. 609].)

The decree from case No. 28939 is affirmed. The appeal from the order in case No. 28938 is dismissed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied April 12, 1966, and appellant's petition in No. 28939 for a hearing by the Supreme Court was denied May 18, 1966.