[L. A. No. 6017. Department Two.—May 6, 1919.]

In the Matter of the Estate of A. J. SEAY, Deceased. JAMES A. MARSH et al., Respondents, v. RALPH M. SEAY et al., Appellants.

[1] ESTATES OF DECEASED PERSONS—WILL—DISTRIBUTION OF RESIDUE OF ESTATE—PERSONS ENTITLED.—Under a clause in a will providing that when all the devisees and legatees were fully paid what had been bequeathed to them, the residue, if any, should be paid in specific amounts to certain nephews and nieces, such nephews and nieces were not entitled to have distributed to them the whole of the residue of the estate over the specific amount so bequeathed to them, amounting to three hundred thousand dollars, but the same was properly distributed among all the nephews and nieces of the deceased, as heirs at law, the deceased having died intestate as to such excess.

[2] ID.—PARTIAL DISTRIBUTION — EVIDENCE — ROUGH DRAFT OF WILL— HARMLESS ERROR.—In a proceeding upon partial distribution under such will, the error in admitting in evidence a so-called rough draft of a will which was found in the same envelope with the will in question, was harmless, since the interpretation of the will was a matter of law to be determined from its language, and the facts and circumstances in proof in the case.

APPEAL from a judgment of the Superior Court of Los Angeles County. James C. Rives, Judge. Affirmed.

The facts are stated in the opinion of the court.

Neighbours, Hoag & Burke for Appellants.

W. I. Gilbert for Respondents.

WILBUR, J.—The controversy in this case arises upon partial distribution and involves a determination of the meaning of the following clause in the will, dated November 28, 1902: "When all the devisees and legatees are fully paid what has been bequeathed to them the residue of my estate, if any, shall be divided as follows: To Ida Dowler, $2500.00, to Nannie Marsh, Jas. A. Marsh, $2000.00, five hundred of which to be used to pay for dress, expenses and dues to the Military Order of the Loyal Legion of the U. S. Mo. Commandery. To Maud Woodruff if married $100, if single $500 —Minnie Carhart $100 (one hundred dollars). Sue E.

Sanders $1000.00 G. E. Marsh, $500.00 Ralph M. Seay upon the sole condition that he has entirely quit drinking for at least one year, $2500.00, otherwise nothing except what has heretofore been given. Earl Seay if married $2000, if single $1000—W. J. Seay if he shall be married $1000, Lulu V. Sigler $2500.00. If there are not enough assets to pay the above bequests, and yield funds to carry out and pay the trusts herein created, then they shall be paid *pro rata.*"

Appellants claim that by this clause of the will it was intended to dispose of the remainder of the estate, and that inasmuch as the estate is worth three hundred thousand dollars more than is otherwise disposed of by the will, this excess amount should be distributed among those mentioned in the above clause in proportion to the respective amounts they were to receive by said clause. The testator declared in the next clauses in his will, "I will make my gifts without regard to the disposition of my property here made, which shall not be considered as advancements. I expect also to make some charitable and public donations which will consume more or less of my estate. I intend to do something for poor children in the way of an industrial school or orphans' home, and to contribute to a public library. But the town and the public must take holt and contribute." The opening clause of the will contains the following recital: "Having seventeen nieces and nephews all of whom are worthy—all of whom have heretofore received financial help from me in proportion to their needs the prodigal and unfortunate receiving more than the rest, and many of them being more or less needy. In making the following disposition of my property I am yet mindful of what I have done for them and they for me, and of their present and prospective needs."

The trial court held that the remainder of the estate, after paying all legacies specified in the will, consisted of three hundred thousand dollars, and that as to such excess the will made no disposition, and distributed said amount equally to the sixteen surviving nieces and nephews of the deceased. Any other construction would lead to a vast disproportion in the amounts received by the nieces and nephews, although the deceased declared that "all of whom are worthy." The construction contended for by appellants would increase the total legacies mentioned to the nieces and nephews in the clause under consideration from eleven thousand seven hundred

CLXXX Cal.—20

dollars to three hundred and eleven thousand seven hundred dollars; while the remaining nieces and nephews get amounts ranging from one thousand dollars to two thousand five hundred dollars. Two facts are patent from the will: First, the intention of the testator during his lifetime to dispose of all property, not devised or bequeathed in the will by gift and advancements; second, that the testator regarded his nephews and nieces with equal affection and considered them equally entitled to his bounty, but not equally needy. There is no indication that these nieces and nephews in the clause under consideration were to be specially favored. On the contrary, the amounts bequeathed them were to be abated *pro rata* if the estate was insufficient to pay the same in full, while the other legacies were to be paid in full. [1] It is plain that the testator failed to make any provision for the contingency of there being an excess over the amounts therein bequeathed, and that such excess must be distributed to the heirs at law.

It is claimed that the trial court erred in admitting in evidence a so-called rough draft of a will which was found in the same envelope with the will that was offered for probate, and some oral evidence in connection therewith. This will was received over the objections of appellants, but with the understanding that the court would reconsider its admissibility on a motion to strike out, the court expressing a doubt as to its admissibility. Subsequently all the oral evidence was stricken out. It does not appear from the briefs whether or not a motion was made to strike out this draft of a will. [2] However that may be, the interpretation of the will is a matter of law, to be determined from the language used in the will, and the facts and circumstances in proof in the case, and upon the record we can determine the proper interpretation without reference to such rough draft of a will. Hence the error in admitting the rough draft was harmless.

The judgment is affirmed.

Melvin, J., and Lennon, J., concurred.