[No. B145085. Second Dist., Div. Six. July 25, 2001.]

Estate of EARL GUIDOTTI, Deceased.
DARLENE GUIDOTTI, Petitioner and Appellant, v.
BILL LOCKYER, as Attorney General, etc., Claimant and Respondent.

**1404**

COUNSEL

J. K. George and Anne C. Cyr for Petitioner and Appellant.

No appearance for Claimant and Respondent.

OPINION

**GILBERT, P. J.**—A clause in a husband's testamentary trust gives his wife the net income for life, but only if she does not remarry or live with a man as though married. Here we conclude that the clause is void as a restraint on marriage. (Civ. Code, § 710.)

Petitioner Darlene Guidotti appeals an order by the probate court denying a petition to reform the will of her deceased husband, Earl Guidotti, to comply with the requirements of the Internal Revenue Code concerning the marital deduction and the charitable deduction.[1] We reverse.

FACTS

On March 13, 1999, Earl Guidotti died. His last will and testament dated November 19, 1993, created a testamentary trust for the benefit of his wife,

---

[1]We refer to the parties by their first names not from disrespect but to ease the reader's task. References to Darlene as petitioner and appellant include Montecito Bank & Trust, also a trustee of Earl's testamentary trust.

Darlene. The trust generally provided for Darlene during her lifetime and upon her death, provided for distribution to "charitable 501 (c)(3) organizations" within the meaning of the Internal Revenue Code. The trust granted Darlene the power to appoint the charitable beneficiaries.

The trust gave Darlene the right to live in the family residence during her lifetime, rent-free. In the event she moved from the residence or was absent for more than 60 continuous days, without an intent to return, Darlene forfeited the right to live in the residence.[2]

The trust also provided that Darlene would receive the net income for her lifetime. However, "[i]n the event [she] should remarry, or, live with a man as though they were husband and wife, even though not married, all income payments to her shall immediately stop . . . ." The trust also permitted an invasion of the trust principal as necessary for Darlene's proper health, maintenance, and support. The power to invade principal, however, ceased in the event of Darlene's remarriage or cohabitation "with a man as though they were husband and wife, even though not married." During the probate proceedings, Darlene expressly disclaimed any interest in the trust principal by filing a written disclaimer pursuant to Probate Code section 275.

On March 13, 2000, Darlene filed a petition to reform the will in order to meet the technical requirements of the Internal Revenue Code regarding the marital and charitable deductions. (Prob. Code, §§ 17200, subd. (a)(14), (15), 15409; 26 U.S.C. § 2055(e).) Darlene asserted that the clause that terminated her income interest upon remarriage or cohabitation precluded the federal estate tax marital deduction and also prevented the charitable tax deduction because the remainder interest passing to charity would be uncertain. (26 U.S.C. §§ 2055, 2056.) She argued that the clause regarding her remarriage or cohabitation with a man was void as a restraint on marriage. (Civ. Code, § 710.)

In support of the reformation petition, Darlene offered a declaration by the attorney who drafted Earl's will and testamentary trust. The attorney declared that Earl was "extremely jealous" of Darlene and "did not want Darlene to remarry nor live with another man as if married" after Earl's death. Earl instructed him to draft the will "in such a manner that Darlene would be severely penalized in the event she remarried or lived with another man as if married." The attorney stated: "[Earl] intended and specifically directed me to draft provisions which would prevent, in so far as he could

---

[2]This provision prevented Darlene from selling the family residence and acquiring a condominium or a smaller home. The trial court declared this provision unenforceable for several reasons. The clause is not in issue here.

control, the remarriage of Darlene or her living with another man as if married."

According to the attorney's declaration, Earl also hoped to obtain a marital deduction and a charitable deduction for federal estate tax purposes. The attorney stated: "[Earl] wished to [accomplish the estate plan] without payment of state or federal death taxes. [¶] He wanted there to be no federal or state estate taxes at his death." Indeed, the trust empowered the personal representative "to elect qualified terminable interest treatment [regarding the marital deduction] for all or for any portion" of the trust.

The probate court considered the petition for reformation and determined that the clause regarding remarriage or cohabitation was not a restraint on marriage because it fell under the exception of Civil Code section 710, "where the intent was not to forbid marriage, but only to give the use until marriage." The trial court reasoned that the clause was "harsh, unwise and somewhat punitive" but "also" reflected an intent that any new partner provide for Darlene's support. The court therefore refused to declare the clause void and reform the will to comply with federal estate tax requirements for favorable tax treatment.

## DISCUSSION

Darlene appeals and contends that the clause restraining marriage is against public policy and void. Her appeal is unopposed by the Attorney General, who represents the yet unnamed charitable beneficiaries.

The interpretation of a written instrument, including a will, is a judicial function. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) A reviewing court may exercise its independent judgment in interpreting an instrument provided that extrinsic evidence regarding interpretation is not conflicting. (*Estate of Edwards* (1988) 203 Cal.App.3d 1366, 1371 [250 Cal.Rptr. 779].) "The reviewing court has the duty to independently interpret the will when . . . the credibility of extrinsic evidence or the resolution of a conflict in the evidence" is not in issue. (*Ibid.*) Thus, the reviewing court must exercise independent judgment to interpret a will where, as here, conflicting inferences may be drawn from uncontroverted evidence. (*Morey v. Vannucci* (1995) 64 Cal.App.4th 904, 913 [75 Cal.Rptr.2d 573] [appellate court not bound by trial court's interpretation of written instrument where extrinsic evidence regarding interpretation does not conflict]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 681, pp. 615-616 [trial court's inferences drawn from uncontradicted extrinsic evidence are not binding on reviewing court].)

Probate Code section 21102, subdivision (a), provides: "The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument." ▮ Thus, the paramount rule in the construction of a will is the determination of the testator's intent. (*Estate of Edwards, supra,* 203 Cal.App.3d 1366, 1371.)

Civil Code section 710 provides: "Conditions imposing restraints upon marriage . . . are void; but this does not affect limitations where the intent was not to forbid marriage, but only to give the use until marriage." Our Supreme Court has invalidated clauses in wills that either restrain marriage generally or marriage to a particular person. (*Estate of Duffill* (1919) 180 Cal. 748, 752-754 [183 P. 337] [testatrix's will reduced gift to son if he married "Mrs. Alice McNamara"]; *Estate of Scott* (1915) 170 Cal. 65, 66 [148 P. 221] [testator's will limited wife's bequest if she "[s]hould . . . wish to marrie agane"].) Forfeiture of a bequest if the beneficiary remarries may, depending upon the words used, be a restraint of marriage and "therefore absolutely void" under Civil Code section 710. (*Estate of Scott, supra,* 170 Cal. 65, 66.)

▮ Here Earl's will terminates payment of all trust income to Darlene "[i]n the event [she] should remarry, or, live with a man as though they were husband and wife." The declaration of the attorney who drafted the will states that Earl was jealous of Darlene and wanted to preclude her remarrying or living with another man. (*Estate of Huntington* (1976) 58 Cal.App.3d 197, 205 [129 Cal.Rptr. 787] [in interpreting a will, court may consider circumstances surrounding its execution].) Indeed, the attorney states that he counseled Earl that a clause restraining her remarriage "might be unenforceable as against public policy." Our review of the wording of the will and more importantly, the evidence surrounding its execution shows that Earl intended to restrain Darlene's relationships or remarriage in violation of Civil Code section 710. His intent was not to provide for her until such time as she formed another relationship. (*Estate of Fitzgerald* (1911) 161 Cal. 319, 322 [119 P. 96] [testator left estate to wife, but "in the event" she remarried, her gift was divided with testator's son unless he died without issue].) Unlike the circumstances in *Estate of Fitzgerald, supra,* 161 Cal. 319, 322, we cannot say there is "not the slightest indication that there was any design on [the testator's] part to deter his wife from contracting another marriage, or that he had any objection whatever to her so doing." We draw the reasonable inference from the declaration of the drafting attorney that Earl intended to restrict Darlene from remarrying or living with a man.

The order is reversed and the matter remanded for further proceedings concerning reformation of the will and the charitable bequests.

Appellant shall bear costs on appeal.

Yegan, J., and Perren, J., concurred.