Filed 5/8/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PAUL PETERSON et al., | B250925 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC451520) |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Conrad Aragon, Josh M. Fredricks, Judges. Affirmed.

Fidelity National Law Group, Jacky P. Wang; Garrett & Tully, Ryan C. Squire, and Zi C. Lin for Defendant and Appellant.

Slovak, Baron, Empey, Murphy & Pinkney, for Plaintiffs and Respondents.

# INTRODUCTION

A probate court ordered the distribution of real property to a surviving spouse who executed and recorded a deed of trust on the real property in favor of a lender to secure a loan. When the surviving spouse died, and payments were not made on the loan, the lender recorded a notice of default and election to sell the real property. Plaintiffs, who purported to have a remainder fee interest in the real property, brought an action, inter alia, to quiet title to the property. They claimed that the surviving spouse only had a life estate in the real property and had no power to encumber it. The lender contends that the trial court erred in granting a summary judgment in favor of plaintiffs because, inter alia, the surviving spouse had the power to sell the property during her lifetime with the proceeds being divided among her and plaintiffs, the probate court order should be interpreted as providing her with fee title to the property and thus the power to encumber it; and the encumbering of real property with a deed of trust was a permissible conveyance of a fee simple estate in the real property. The lender contends alternatively that the surviving spouse had a percentage fee interest in the property and, as a matter of equity, the loan should be viewed as an advance against the proceeds to which the surviving spouse would have been entitled had the property been sold during her life.[1] We reject the lender's contentions and affirm the judgment in favor of plaintiffs. Even though the surviving spouse had a right to sell the property, that right did not convert her life estate into a fee simple estate. The lender had no rights in the property upon the death of the surviving spouse.

# BACKGROUND

By grant deed recorded in 1965, Lawrence Peterson (Lawrence) and his then wife, Carolyn Peterson, acquired title to real property at 4385 Mentone Avenue in Culver City,

---

[1] In its reply brief, the lender withdrew its argument that even if the surviving spouse had a life estate in the real property, it was a bona fide encumbrancer for value without notice of the probate order declaring her life estate interest in the real property.

California (Property).  Lawrence acquired sole title to the Property by a quitclaim deed that was recorded in 1985.  Lawrence, who was then married to Jacqueline Peterson (Jacqueline), died in 1986.  At the time of his death, Lawrence owned the Property as his sole and separate property.

The Los Angeles Superior Court, in a probate proceeding entitled *In the Matter of the Estate of Lawrence Peterson etc.*, admitted Lawrence's last will and testament.  In 1986, the trial court in that proceeding entered an Order Settling First and Final Report of the Executrix, Allowing Statutory Commission to the Executrix, Allowing Statutory Fees to the Attorneys for the Executrix and Allowing Final Distribution of Estate (Probate Order) that provided, in relevant part:

"Distribution is hereby authorized to decedent's wife, JACQUELINE C. PETERSON, of the improved parcel of real property located at 4385 Mentone Avenue, in the City of Culver City, County of Los Angeles, State of California, ('Premises') more particularly described as follows:

"'Lot No. 57 of Tract No. 17328 in Culver City as per Map recorded in Book 426, Pages 44 to 46 (Assessor's Parcel No. 4209 019 005)'

"[¶]  Subject to the conditions hereinafter set forth:

"(1)  Decedent's said wife may reside in the Premises rent free for her lifetime; provided, however, that if she shall remarry, the Premises shall thereupon be sold, and the proceeds therefrom shall be distributed one-third to decedent's wife and one-third each to decedent's two sons, MARK C. PETERSON ('MARK') and PAUL D. PETERSON ('PAUL') [plaintiffs];

"(2)  Decedent's wife may at her option sell the Premises at any time, whereupon the proceeds therefrom shall be distributed in the same manner set forth in paragraph (1) immediately preceding;

"(3)  Upon the death of decedent's said wife prior to a sale of the Premises, the Premises shall pass in equal share to MARK and PAUL, and

3

"(4)  If either son shall be under age thirty at the time of a sale of the Premises under paragraph (1) or (2) hereinabove, then his share shall be held IN TRUST as follows:

"a.  Such son shall receive $5,000 per year from his share of the proceeds from the sale of the Premises;

"b.  When such son shall attain age thirty, the Trustee shall distribute to him the remaining share then held for his benefit, and

"c.  RONALD J. EPMAN shall serve as Trustee thereunder without bond."
On April 8, 1987, the Probate Order was recorded in the Official Records, Recorder's Office of Los Angeles County, California.

By a grant deed executed on January 2, 2003, and recorded on January 8, 2003, Jacqueline purported to transfer the Property to "Jacqueline C. Peterson, a Widow." Epman, the executor of Jacqueline's estate, conceded that Jacqueline did not have authority to convey a fee interest to herself and has stipulated in the instant case to the relief plaintiffs sought—cancellation of that grant deed.  On January 2, 2003, Jacqueline borrowed $165,000 from California National Bank and executed a deed of trust in the bank's favor to secure the loan.  The deed of trust was recorded on January 8, 2003.  On March 11, 2008, the $165,000 deed of trust, which had been assigned to Countrywide Home Loans, Inc., was reconveyed to Jacqueline.

On March 4, 2008, Jacqueline obtained a loan from defendant and appellant Wells Fargo Bank, N.A. (Wells Fargo) of $416,900 and executed a deed of trust in favor of Wells Fargo to secure the loan.  The deed of trust contained an irrevocable grant and conveyance of the Property to Wells Fargo's trustee with a power of sale.

Jacqueline died on March 25, 2010.  When Wells Fargo did not receive its May 1, 2010, monthly payment on its loan to Jacqueline, its trustee, defendant Cal-Western Reconveyance Corporation (Cal-Western), recorded a notice of default and election to sell the Property.

In response to the notice of default and election to sell the Property, plaintiffs brought an action against Wells Fargo, Cal-Western, and Epman, the executor of

4

Jacqueline's estate.[2]  In their first amended verified complaint, plaintiffs asserted a cause of action for cancellation of a written instrument (the 2003 grant deed) against Epman to which, as noted, Epman stipulated that judgment in favor of plaintiffs could be entered; causes of action regarding the Property for cancellation of a written instrument (the March 4, 2008, Wells Fargo deed of trust), cancellation of a written instrument (Cal-Western's notice of default), preliminary and permanent injunction, and slander of title against Wells Fargo and Cal-Western; and a cause of action for quiet title in the Property against Epman, Wells Fargo, and Cal-Western.

Plaintiffs and Wells Fargo filed cross motions for summary judgment or, alternatively, summary adjudication as to each of plaintiffs' causes of action.  The trial court granted plaintiffs summary adjudication as to each of their causes of action except for the cause of action for slander of title, as to which cause of action the trial court granted Wells Fargo summary adjudication.  Accordingly, the trial court, with respect to the Property, ordered cancelled the January 2, 2003, grant deed; Wells Fargo's March 4, 2008, deed of trust; and Cal-Western's notice of default.  It ruled that those documents were null and void and of no force and effect.  The trial court also ordered that fee simple title to the Property be quieted in favor of plaintiffs as joint tenants.  The trial court entered judgment on its orders.  Wells Fargo filed a timely notice of appeal.

## DISCUSSION

### I.      Standard of Review

A trial court grants summary judgment when the moving party demonstrates that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  A plaintiff meets its burden of showing that there is no defense to a cause of action if it has proven each

---

**2**      With respect to the original complaint, Cal-Western filed a "Declaration of Non-Monetary Status" in which it agreed to be bound by any non-monetary order or judgment against it with respect to the Wells Fargo deed of trust.  Cal-Western is not a party to this appeal.

5

element of the cause of action entitling it to judgment on that cause of action. (Code Civ. Proc. § 437c, subd. (p)(1).) If the plaintiff has met its burden, the burden shifts to the defendant to demonstrate that a triable issue of material fact exists as to that cause of action or defense. (*Ibid.*) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. [Fn. omitted.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

The parties agree as to the basic facts underlying their dispute, but disagree as to the legal consequences of those facts. We review de novo the legal effect of undisputed facts. (*County of San Diego v. Ace Property & Casualty Ins. Co.* (2005) 37 Cal.4th 406, 414; *Century Transit System, Inc. v. American Empire Surplus Lines Ins. Co.* (1996) 42 Cal.App.4th 121, 125.) Moreover, there being no extrinsic evidence in the record, the interpretation of a document such as a probate order is a matter of law (see *Roden v. Bergen Brunswig Corp.* (2003) 107 Cal.App.4th 620, 624-625 [judgment]; *Estate of Goyette* (1971) 14 Cal.App.3d 224, 232 [decree]; see also *Estate of Norris* (1947) 78 Cal.App.2d 152, 159 [decree]; *Estate of Seay* (1919) 180 Cal. 304, 307 [will];), which we review de novo (*Estate of Guidotti* (2001) 90 Cal.App.4th 1403, 1406). We apply the same de novo standard in reviewing a grant of summary adjudication. (*Food Pro Internat., Inc. v. Farmers Ins. Exchange* (2008) 169 Cal.App.4th 976, 993.)

## II. The Trial Court Properly Found That Jacqueline Held a Life Estate in the Property

Wells Fargo ultimately conceded that if Jacqueline held a life estate in the property, she could not encumber the fee interest in the Property unless, as Wells Fargo contends, and as discussed *post,* the encumbrance is treated as a permissible sale of the Property.[3] Civil Code section 1105 provides, "A fee simple title is presumed to be

---

[3]    "[A] life tenant has the power to . . . mortgage his or her interest in the property, but he or she cannot create an estate that will extend beyond the duration of the life estate

intended to pass by a grant of real property, unless it appears from the grant that a lesser estate was intended." As the court in *Estate of Smythe* (1955) 132 Cal.App.2d 343 at pages 345 through 346 said, "A life estate is an estate whose duration is limited to the life of the person holding it or of some other person. [Citation.] 'It is not an essential requisite to the giving of a life estate, that it be expressly declared to be such, nor that the term "life estate" shall be used. The intention can as well be manifested by other words, referring to the estate conveyed and describing its characteristics, and if by that means the intention to vest a life estate, only, is shown, it will be as effectual as if it were expressly so stated.' [Citation.]"

In *Estate of Smythe, supra,* 132 Cal.App.2d 343, the decedent's will contained the following provision: "'All that I possess I give and bequeath to this same RUTH SMYTH for her during her life time, as she may need or see fit to use. If, upon her death, any of my estate remains, it is my will that such remainder be divided equally through her will between Pacific Home a California Corporation in Los Angeles, where I now reside, and the Church of the Messiah, of which I am now a Member.'" (*Id.* at p. 345.) The trial court ordered the property distributed to Ruth Smyth in fee unconditionally, without restrictions or limitations. (*Ibid.*) Pacific Home and Church of the Messiah appealed. (*Ibid.*)

On appeal, Pacific Home and Church of the Messiah contended that the decedent's will created a life estate in Ruth Smyth with the right of use and the remainder to them. (*Estate of Smythe, supra,* 132 Cal.App.2d at p. 354.) Ruth Smyth contended she took an absolute fee simple estate in all of the decedent's property and that the attempted disposition to Pacific Home and Church of the Messiah therefore was void. (*Ibid.*) The Court of Appeal agreed with Pacific Home and Church of the Messiah, holding that the will had given the property to Ruth Smyth for her life with the power to consume the property as she saw fit and the remainder to Pacific Home and Church of the Messiah. (*Ibid.*) The court explained, "Where an estate is devised in fee, a gift over of what is left

in the absence of an express grant of such a power." (3 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 9:21, p. 9-46, fns. omitted.)

7

or not disposed of by the first taker is void. This rule, called the power rule, has no application if the estate of the first taker is a life estate. [Citation.] A life estate with power to use and consume part or all of the principal for specified purposes and a limitation over of the remainder on termination of the life estate has long been recognized in this state. [Citation.] Such power of absolute disposition, annexed to a life estate, does not enlarge that estate into an estate in fee. [Citations.] The rule in this state, in accord with the majority view, is that where an estate for life with remainder over is given with a power of disposition in fee of the remainder annexed, the limitation for the life of the first taker will control and the life estate will not be enlarged to a fee notwithstanding the power of the life tenant to dispose of the fee. [Citations.]" (*Id.* at p. 346; see *Estate of Cooper* (1969) 274 Cal.App.2d 70, 78; see also *Luscomb v. Fintzelberg* (1912) 162 Cal. 433, 441 ["The authorities are uniform to the effect that where such are the terms of a devise—a life estate only being expressly given to the first taker, with power of disposition of the property for a certain purpose, with a devise over—the life estate is not enlarged into either a fee or an absolute right of property . . ."]; see also *Adams v. Prather* (1917) 176 Cal. 33, 40 [will leaving estate to surviving spouse, who had "unrestricted use and consumption" during his life, remainder to be given to named relatives upon his death created life estate]; *Hardy v. Mayhew* (1910) 158 Cal. 95, 100 [one with life estate can have the power to dispose or consume the whole of the property]; *Estate of McKenna* (1981) 118 Cal.App.3d 66, 69; 3 Miller & Starr, Cal. Real Estate, *supra,* § 9:21, at p. 9-44 ["Express language in the grant or will may confer on the life tenant the right to totally consume the corpus of the estate for the care, support, and maintenance of the life tenant, but this power does not enlarge the estate into a fee . . ."]; 3 Rest.3d Property (2011) § 18.1, com. c, p. 231 ["Sometimes a document of transfer gives a transferee a legal life estate in property and also a presently exercisable general power of appointment over the property in which the life estate exists. The combination of the power and the life estate in the same person does not change the person's ownership interest into a fee simple absolute, even though the presently exercisable general power enables the owner of the life estate to accomplish most of the things that an owner in fee simple could

8

accomplish"]; 3 Rest.3d Property, *supra,* § 24.5, com. h, at p. 449 ["A life estate is sometimes coupled with a power to sell or dispose of a larger estate or to consume the whole. Historically, such an estate would have been called a life estate coupled with a power to sell, consume, or dispose, but in function the estate is a life estate with a power of appointment in the life tenant"]; Rest.2d Property (1986) § 12.1, com. b, p. 25.)

Relying on Civil Code section 885.010, subdivisions (a)(1) and (a)(2),[4] Wells Fargo contends that the Probate Order conveyed to Jacqueline a fee estate subject to limiting conditions or "conditions subsequent"—i.e., conditions that would terminate her fee estate, and not a life estate, because it was not certain under the Probate Order that plaintiffs ultimately would receive fee title to the Property. That is, if Jacqueline remarried, thus forcing a sale of the Property or if she elected to sell the Property during her lifetime, then plaintiffs would not receive fee title to the Property at Jacqueline's death. Thus, Wells Fargo argues, the Probate Order transferred to Jacqueline a fee interest in the Property subject to conditions subsequent—the conditions subsequent being the sale of the Property, or remarriage, or the Property's passing to plaintiffs on Jacqueline's death. The Probate Order, however, granted Jacqueline a lifetime interest in the Property that terminated upon her death. As explained above, that Jacqueline was

---

[4]      Section 885.010, subdivision (a) provides:
         "(a) As used in this chapter:
         "(1) 'Power of termination' means the power to terminate a fee simple estate in real property to enforce a restriction in the form of a condition subsequent to which the fee simple estate is subject, whether the power is characterized in the instrument that creates or evidences it as a power of termination, right of entry or reentry, right of possession or repossession, reserved power of revocation, or otherwise, and includes a possibility of reverter that is deemed to be and is enforceable as a power of termination pursuant to Section 885.020.
         "(2) 'Power of termination' includes the power created in a transferee to terminate a fee simple estate in real property to enforce a restriction on the use of the real property in the form of a limitation or condition subsequent to which the fee simple estate is subject, whether the power is characterized in the instrument that creates or evidences it as an executory interest, executory limitation, or otherwise, and includes the interest known at common law as an executory interest preceded by a fee simple determinable."

9

required or permitted to sell the Property during her lifetime did not transform her life estate interest into a fee interest. (*Estate of Smythe, supra,* 132 Cal.App.2d at p. 346.)

The Probate Order provided that Jacqueline could live in the Property rent free "for her lifetime" and that the Property would pass to plaintiffs at her death. Jacqueline was permitted to sell the Property during her life, and the Property had to be sold if she remarried. The proceeds of any sale would be divided equally between Jacqueline and each of the plaintiffs. Because the Probate Order granted Jacqueline the right to live in the Property rent free for her lifetime and provided that the Property would pass to plaintiffs at her death, the Probate Order established in Jacqueline a life estate interest in the Property and in plaintiffs a fee interest as remaindermen. Giving Jacqueline a rent-free residence during her lifetime established a life estate because that is a limitation on the duration of her estate, not a condition on the use of the property. That Jacqueline was granted the right to sell the Property or that the Property had to be sold if she remarried[5] did not convert her life estate interest in the Property into a fee interest. That right and obligation to sell were limitations on the estate granted, not conditions subsequent. (*Luscomb v. Fintzelberg, supra,* 162 Cal. at p. 441; *Estate of Smythe, supra,* 132 Cal.App.2d at p. 346; see also *In re Reinhardt* (1887) 74 Cal. 365, 367 [determinable life estate]; *Estate of Bernatas* (1958) 162 Cal.App.2d 693, 700 [life estate determinable upon remarriage]; *Estate of Horgan* (1949) 91 Cal.App.2d 618, 621 [when property is bequeathed for life or until devisee remarries, the devisee has a life estate with a limitation and not a condition subsequent]; 1 Tiffany on Real Property (3d ed. 1939) § 55, p. 80.)

---

[5] See Civil Code section 710 ["Conditions imposing restraints upon marriage . . . are void; but this does not affect limitations where the intent was . . . to give the use until marriage"]; *Estate of Fitzgerald* (1911) 161 Cal. 319 [provision not an invalid condition, as provides for use so long as unmarried]; *Estate of Guidotti, supra,* 90 Cal.App.4th at p. 1407 [restraint on marriage].)

10

**III**.     **The March 4, 2008, Wells Fargo Deed of Trust Was Not a Sale of the Property**

Wells Fargo argues that its March 4, 2008, Deed of Trust was, in effect, a sale of the Property permitted under the Probate Order because Jacqueline conveyed legal title to the Property to the trustee. We disagree.

Wells Fargo argues, "Legally speaking, . . . Jacqueline *did* convey the [P]roperty. She did not merely encumber it." The California Supreme Court has explained, however, that "'a deed [of trust], though in form a grant, is really only a mortgage, and does not convey the fee. A trust-deed of the kind here involved differs from such a deed only in that it conveys the legal title to the trustee so far as may be necessary to the execution of the trust. It carries none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in the payment of his debt. The nature of such an instrument has been extensively discussed by this court, and the sum and substance of such discussion is that while the legal title passes thereunder, and the trustees cannot be held to hold a mere "lien" on the property, it is practically and substantially only a mortgage with power of sale. [Citations.] The legal title is conveyed solely for the purpose of security, leaving in the trustor or his successor a legal estate in the property, as against all persons except the trustees and those lawfully claiming under them. [Citations.] Except as to the trustees and those holding under them, the trustor or his successor is treated by our law as the holder of the legal title. [Citation.] The legal estate thus left in the trustor or his successors entitles them to the possession of the property until their rights have been fully divested by a conveyance made by the trustees in the lawful execution of their trust, and entitles them to exercise all the ordinary incidents of ownership in regard to the property, subject always, of course, to the execution of the trust. . . . The estate of the trustees absolutely ceases upon the payment of the debt [citation], leaving the whole title in the grantor in whom it was vested at the execution of the trust-deed, or his successors, and leaving nothing in the trustees except the bare legal title of record, which they can be compelled to reconvey to the owner simply to make the record title clear. [Citation.]'" (*Bank of Italy etc. Assn. v. Bentley*

11

(1933) 217 Cal. 644, 656-657, superseded by statute on other grounds as stated in *Ung v. Koehler* (2005) 135 Cal.App.4th 186, 192-194.)

More recently, the Supreme Court has said, "In practical effect, if not in legal parlance, a deed of trust is a lien on the property." (*Monterey S. P. Partnership v. W. L. Bangham, Inc.* (1989) 49 Cal.3d 454, 460; see also 4 Miller & Starr, Cal. Real Estate (3d ed. 2013) § 10:2, p. 10-21.) Thus, although Wells Fargo acquired technical legal title to the Property through its trust deed, such acquisition did not constitute a permissible sale of the Property under the Probate Order.

## IV.    Jacqueline's Power as Executrix Under Lawrence's Will

Wells Fargo argues that Lawrence's will named Jacqueline as his executrix and expressly gave her the power to encumber the Property. Wells Fargo did not submit Lawrence's will to the trial court as evidence in support of its summary judgment motion or in opposition to plaintiffs' summary judgment motion. We denied Wells Fargo's request to take judicial notice of the probate file which contained Lawrence's will as it was not before the trial court. (See *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.) Because Lawrence's will was not before the trial court and is not before us, we need not address Wells Fargo's argument. We note, however, that at the time Jacqueline purported to encumber the Property in March 2008, she held a life estate in the Property. All of Lawrence's property presumably was by then distributed pursuant to the Probate Order, which order was recorded in April 1987. There is no indication that Jacqueline encumbered the Property as Executrix or obtained approval from the Probate Court to do so.

## V.    Wells Fargo Cannot Claim One-Third Interest in the Property or its Possible Proceeds

Wells Fargo contends alternatively that its deed of trust encumbered one-third of the Property under the theory that Jacqueline was granted a one-third fee interest and two-thirds life estate interest in the Property, or, as a matter of equity, that its deed of

trust should have been viewed as an advance against the proceeds to which Jacqueline would have been entitled if the Property had been sold during her life. Wells Fargo's alternative contentions fail.

1.  *The Probate Order Cannot be Construed as Establishing in Jacqueline a One-Third Fee Interest and Two-Thirds Life Estate Interest in the Property*

Wells Fargo contends that because the Probate Order permitted Jacqueline to sell the Property and retain one-third of the proceeds, the order may be viewed as having granted her a one-third fee interest and a two-thirds life estate interest in the Property subject to the condition that she had to share two-thirds of proceeds if she sold the Property. Thus, Wells Fargo reasons that we should hold that its deed of trust encumbered a one-third fee interest in the Property.

As explained above, the Probate Order established in Jacqueline a life estate in the Property and not a fee interest. Wells Fargo does not cite any part of the Probate Order that can be construed as establishing in Jacqueline a one-third fee interest and two-thirds life estate interest in the Property. Moreover, as also explained above, that a probate order empowers the holder of a life estate in real property to sell the property does not transform the life estate into an estate in fee. (*Estate of Smythe, supra,* 132 Cal.App.2d at pp. 345-346.)

2.  *Equity Does Not Require That the Trust Deed Be Viewed as an Advance Against the One-Third of the Sale Proceeds to Which Jacqueline Would Have Been Entitled if the Property Had Been Sold*

Wells Fargo contends that equity requires that the deed of trust be viewed as an advance against Jacqueline's one-third interest in the proceeds of the sale of the Property. Wells Fargo argues that if Jacqueline had "permanently sold" the Property as she was permitted to do, she would have been entitled to one-third of the proceeds. For purposes of its lien, Wells Fargo says that the result should not be different, "simply because she did not permanently convey away fee title." Wells Fargo also argues that because

13

plaintiffs did not have the right to object if Jacqueline had sold the Property, they "cannot now object after-the-fact—particularly because plaintiffs get to keep (and thus profit from) the [P]roperty, which would not have occurred had Jacqueline forever sold the [P]roperty." Thus, Wells Fargo argues, we should reverse the judgment against it and order that its deed of trust encumbered one-third of the fee interest in the Property.

Wells Fargo's argument is not supported by the record or by equity. Wells Fargo does not refer to any part of the Probate Order or the documents for its loan to Jacqueline that states or even suggests that the loan was intended to be an advance against sale proceeds. The Probate Order permitted Jacqueline to live in the Property rent free for her lifetime or to sell the Property. It did not permit Jacqueline to encumber a part of the fee as an advance on the proceeds of a sale that might never take place.

Wells Fargo's claim that equity requires that plaintiffs should be permitted to "avoid" only two-thirds of the trust deed likewise is unpersuasive. Wells Fargo or its agent failed properly to determine that Jacqueline had a life estate and not fee interest in the Property prior to loaning her money. Plaintiffs were not involved in the loan. Wells Fargo or its agent, and not innocent third parties, should bear any loss resulting from Wells Fargo's loan to Jacqueline. (Civ. Code, § 3543 ["Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer"].)

14

## DISPOSITION

The judgment is affirmed.  Plaintiffs are awarded their costs on appeal.

**CERTIFIED FOR PUBLICATION**


MOSK, J.


We concur:


TURNER, P. J.


KRIEGLER, J.