Filed 11/6/25  Schlichter v. Kennedy CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MARK KEVIN SCHLICHTER, | |
| Plaintiff and Respondent, | E083744 |
| v. | (Super.Ct.No. TRUPS2000158) |
| GARY KENNEDY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Damian Garcia, Judge.  Affirmed.

The Law Office of Jeff Grotke and Jeff Grotke for Defendant and Appellant.

Law Offices of Doonan & Doonan, Inc. and D. Scott Doonan for Plaintiff and Respondent.

Gary Kennedy appeals from a judgment entered in a probate proceeding in which the court found that he was not the putative spouse of his long-term romantic partner and was therefore not her heir.  We affirm.

1

BACKGROUND

In 1987, Anna Irene Caputo executed the Last Will and Testament of Anna I. Caputo (the will) several months before she died. In the will, Caputo identified "Joanne Schlichter Kennedy" as one of her three living adult children.[1]

The will was subsequently admitted to probate in Los Angeles County. In August 1988, a judgment was entered establishing a testamentary trust deemed the Caputo trust, which adopted the terms of the will. Joanne was appointed as trustee of the Caputo trust. The estate had approximately $500,000 in assets, including real property located on Heliotrope Drive in Lake Arrowhead, California (the Heliotrope property).

The Caputo trust provided for distribution of Caputo's assets "as provided for in" the will as follows: "To decedent's daughter, Joanne, as trustee, all of decedent's real property and personal property to be held in trust to be used by her during her lifetime as she or a successor trustee may direct. Any assets remaining in the trust upon her death shall pass to her heirs as she directs by Will or trust instrument. In the event she makes no provision for distribution then upon her death such remainder shall pass to her children, Michael Alan Schlichter, Mark Kevin Schlichter, and Wendy Schlichter Smith, in equal shares." Michael died in 2013.

Several weeks after the judgment was entered, Joanne purchased a property in Banning, California (the Banning property) and took title to the property by grant deed as

---

[1]    Joanne is identified in her death certificate as Joanne Schlichter. To avoid confusion, we refer to Joanne and anyone with the last name Schlichter by their first names after they are initially identified by their full name. No disrespect is intended.

"Joanne Schlichter, an unmarried woman." Twenty-eight years later, in October 2016, Joanne executed The Joanne Schlichter Trust in which she named Kennedy as the trustee and the sole beneficiary of the trust's assets, including the Heliotrope property and the Banning property. On the same day that Joanne executed her trust, she also executed grant deeds described as "trust transfer deed[s]" purportedly conveying both the Banning property and the Heliotrope property from Joanne to Kennedy as the trustee of the Joanne Schlichter Trust.

Joanne died in January 2019. In July 2020, Kennedy recorded the grant deed to the Heliotrope property with the San Bernardino County recorder's office. In August 2020, Mark Schlichter filed a verified petition under Probate Code section 850 in a San Bernardino County probate court to be appointed the successor trustee of the Caputo trust and to recover the real property of the Caputo trust held by Kennedy, which he identified as the Heliotrope property. (Unlabeled statutory references are to the Probate Code.) The petition alleged that Kennedy was Joanne's long-term boyfriend, whom she never married.

In September 2020, the probate court found that Joanne's life estate in the Caputo trust terminated on her death, making Mark, Wendy, and Michael's estate the beneficiaries of the Caputo trust. The court appointed Mark as the trustee of the Caputo trust.

Kennedy subsequently filed a verified objection to Mark's petition. Kennedy claimed that he and Joanne were married for 30 or 37 years and that the Heliotrope

3

property was not part of the Caputo trust, because Joanne had expressly conveyed it to him before she died.

The San Bernardino County probate court held an eight-day trial on the petition from October 30, 2023, through November 9, 2023. Six witnesses testified, including Kennedy and Mark.

On November 2, 2023, both Kennedy and Mark signed a stipulation about the Banning property in a case proceeding in Riverside County regarding Joanne's trust. Kennedy and Mark stipulated as follows: "Whereas the Parties agree that Gary Kennedy may seek any and all relief necessary in the San Bernardino Trust Litigation to perfect, record, or otherwise defend any claim to title to the Banning property, as if fully pled before trial. This relief may be similar to that sought in a Heggstad petition, or reformation, or to otherwise equitably correct the deed, or order that it may be recorded. [¶] Whereas the Parties agree that Mark Kevin Schlichter may assert any and all claims and seek any and all relief necessary in the San Bernardino Trust Litigation regarding the Banning parcel, including without limitation seeking relief to cancel and/or invalidate the deed conveying the Banning Parcel from Joanne Schlichter to the Gary Kennedy, Trustee of the Joanne Schlichter Trust as though fully pled before trial."

Kennedy and Mark introduced the stipulation at the trial on Mark's petition. Kennedy's counsel represented that under the stipulation Mark's "relief is that he can ask for, as if pleaded, the property be treated as a part of the trust if he can show it." Mark's counsel explained that his "client is going to present claims that it either belongs to the

4

Caputo or it doesn't. [¶] I mean, that's essentially it, you know, and all issues surrounding Banning. That's the whole point to litigate it all here. So I don't think either one of us should be limited to the claims." Kennedy's counsel agreed with that explanation, saying, "That's right." The court ruled that with the stipulation it could "make a determination regarding ownership or title or any claims related to the Banning property; that's all encompassed." Kennedy's counsel did not object.

Kennedy testified that he and Joanne were married in a church over 30 years ago. He could not recall the specific date. Kennedy and Joanne did not get a marriage license. In a declaration signed by Kennedy earlier in 2023 to support a motion filed in a probate proceeding in Riverside County involving the Joanne Schlichter Trust, Kennedy attested that Joanne was his putative spouse and that he and Joanne did not register their marriage with the State of California "[b]ecause of strongly held religious beliefs." Asked at trial what he meant by that, Kennedy said that he believed that "a marriage should be your vows under God where you vow to have and hold, keep in sickness and health, and it does haven't anything to do with the state, and the state shouldn't have jurisdiction over your marriage." Kennedy confirmed that he was "aware that in California you need a marriage license to get married."

Wendy testified that Joanne paid for the Banning property with cash from the Caputo trust. When Joanne purchased the Banning property, she told Wendy that "there was enough cash in [Wendy's] grandmother's estate to purchase the house by cash."

After the presentation of evidence, both parties submitted closing trial briefs and responses. In Kennedy's response to Mark's closing brief, Kennedy argued that the Banning property deed was "beyond any statute of limitations" because Joanne owned the property for over 35 years.

In April 2024, the trial court issued a written ruling on the matter. The trial court found Mark credible, Kennedy "less credible," and all of the remaining witnesses credible.

The court granted Mark's section 850 petition to recover the property of the Caputo trust held by another based on the following findings: (1) The Caputo trust gave the Caputo trust assets to Joanne as trustee of the Caputo trust and "created a life estate" in the Caputo trust assets "for the benefit of Joanne Schlichter to use during her lifetime and to be held in trust by Joanne Schlichter"; (2) Joanne's power of appointment of the Caputo trust assets was limited to disposing of the assets upon her death by will or trust to her heirs; (3) Joanne was single when she died; (4) Joanne and Kennedy were never legally married, and Kennedy was not Joanne's putative spouse "as a matter of law"; (5) Joanne's heirs upon her death were her two living biological children and the issue of her third child; (6) any attempt by Joanne to dispose of the Caputo trust "assets to anyone other Joanne Schlichter's heirs is void as contrary to the term of the Caputo Trust"; (7) the Joanne Schlichter Trust was "an invalid exercise of the specific power of appointment in [the Caputo trust] because its primary beneficiary is [Kennedy] and includes non-heirs a[s] residual beneficiaries"; (8) the Heliotrope property was an asset of the Caputo trust,

6

so the money from the sale of the Heliotrope property held by Kennedy's attorney belongs to the Caputo trust; (9) the Banning property "is an asset of the Caputo Trust because it was purchased with Caputo Trusts assets"; and (10) "[t]he Grant Deed executed by Joanne Schlichter on October 17, 2016, purportedly conveying the [Banning] Propery to the Joanne Schlichter trust is canceled and is of no force and effect."

In rejecting Kennedy's claim that he was Joanne's putative spouse, the court reasoned that Kennedy "did not have a good-faith subjective belief that he and Joanne were married." Kennedy "knew a marriage license was required but chose not to obtain a marriage license because of his religious beliefs." The court found that Joanne and Kennedy made a conscious choice not to get legally married, so there was no mistaken belief that the marriage was valid.

The trial court also rejected Kennedy's statute of limitations argument about the Banning property, reasoning that "Joanne's purchase of the [Banning] property in her name was discovered after her death which would not be a bar to the statute of limitations to set aside the conveyance."

DISCUSSION

Kennedy challenges the trial court's ruling on several grounds. None of the arguments has merit.

Section 21102 provides that in interpretation of a trust instrument, the transferor's intent "as expressed in the instrument controls the legal effect of the dispositions made in the instrument." (*Id.*, subd. (a).) "If the language of the instrument clearly sets forth the

7

intent, the court does not consider extrinsic evidence; it only looks to extrinsic evidence in the event of an ambiguity." (*Trolan v. Trolan* (2019) 31 Cal.App.5th 939, 949.)

A stipulation is an agreement that is "subject to the ordinary rules employed to interpret contracts." (*Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1341.) The mutual intention of the parties when the stipulation is formed governs its interpretation. (Civ. Code, § 1636.) Their intent is to be inferred solely from the written provisions of the stipulation, if possible. (*Id.*, § 1639.) If the language of the stipulation is clear and explicit, then the language governs its interpretation. (*Id.*, § 1638.)

Interpretation of a trust and a written stipulation presents a question of law that we independently review "unless interpretation turns on the credibility of extrinsic evidence or a conflict therein." (*Burch v. George* (1994) 7 Cal.4th 246, 254; *Munoz v. City of Tracy* (2015) 238 Cal.App.4th 354, 358.)

Kennedy first argues that the trial court did not have jurisdiction over the Banning property, so the trial court's ruling with respect to that property was "*ultra vires* and void." He contends that the parties' "'stipulation' was not a stipulation to go forward without pleadings" and that Schlichter was required "to plead and prove a cause of action, violating due process and established legal standards."

Kennedy made the opposite representation about the meaning of the stipulation in the trial court. The parties agreed, and the trial court ruled, that the stipulation allowed the court to determine ownership of the Banning property. Kennedy's counsel told the

8

court, orally on the record, that under the stipulation Mark's "relief [was] that he can ask for, *as if pleaded*, the property be treated as a part of the trust if he can show it." (Italics added.)

"'A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.'" (*Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874.) Because Kennedy agreed in the trial court that the stipulation conferred jurisdiction on the court to determine title to the Banning property "*as if pleaded*" (italics added), he cannot now argue that the court lacked jurisdiction to hear unpled claims concerning the Banning property or otherwise to determine ownership of that property. (*Ibid.*)

In any event, the parties' written stipulation conferred jurisdiction on the trial court to do exactly what it did, namely, "to cancel and/or invalidate the deed conveying the Banning Parcel from Joanne Schlichter to the Gary Kennedy, Trustee of the Joanne Schlichter Trust *as though fully pled before trial*." (Italics added.) The unambiguous terms of the stipulation are thus consistent with the parties' oral expressions of their understanding of the agreement in the trial court. Under the plain language of the stipulation, the court was authorized to determine the validity of the deed transferring title of the Banning property to Kennedy even if the claim was unpled.

Kennedy next argues that there was "no basis to toll the statute of limitations for 35 years" to challenge the propriety of the Banning property deed, and he contends that

9

the statutory period began to run when Joanne recorded the deed in 1988. The argument is forfeited because Kennedy has not adequately developed it or supported it by citation to legal authority. Kennedy never identifies the specific type of claim (breach of trust? quiet title?) that he contends is untimely, says what the statutory period is, or cites legal authority concerning when the period begins to run. We will not develop Kennedy's arguments for him. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).) And the one case that he cites, *Baker v. Beech Aircraft Corp.* (1979) 96 Cal.App.3d 321, is a personal injury case and hence is irrelevant.

In any event, the argument is meritless. The Caputo trust gave Joanne a life estate in the Caputo trust assets. Joanne could purchase the Banning property with the Caputo trust assets. (*Bliss v. Security-First Nat. Bank* (1947) 81 Cal.App.2d 50, 56 ["Although a life tenant is privileged to convert one kind of property into another, he must be at all times guided by principles of prudence to the end that the value of the property is not diminished"].) Joanne did not breach the terms of the trust as either beneficiary or trustee until she died, when she purported to convey the Banning property to Kennedy, who was not her heir. By the terms of the Caputo trust, Mark, Wendy, and Michael's estate did not become beneficiaries of that trust until Joanne died without devising by will or trust the Caputo trust assets to any heir. Because the Caputo trust's terms were not breached until Joanne's death, the statute of limitations concerning that breach began to run when she died, and not before. (*Ehret v. Ichioka* (1967) 247 Cal.App.2d 637, 644.) Mark filed his petition less than two years later. We are not aware of any arguably applicable statute

10

of limitations that is less than two years, and Kennedy cites none.  (See, e.g., § 16460, subd. (a)(2) [three-year statute of limitations for a beneficiary to assert a claim against a trustee for breach of trust "after the beneficiary discovered, or reasonably should have discovered, the subject of the claim"].)

Kennedy also argues that "[t]he court failed to articulate a legal theory for canceling the 1988 deed" because "[c]ancellation or reformation of a deed requires a cause of action, such as fraud or mistake, supported by evidence."  The argument is meritless, because the trial court did not cancel the 1988 deed.  The trial court found that the Banning property "is an asset of the Caputo Trust because it was purchased with Caputo Trust assets."  Thus, under the trial court's ruling, Joanne took title to the Banning property pursuant to the 1988 deed, but she did so as trustee of the Caputo trust. The trial court cancelled the 2016 grant deed purportedly conveying the Banning property to the Joanne Schlichter Trust, but the court did not cancel the 1988 deed.  Rather, the court's ruling affirmed the validity of the 1988 deed, conveying title to Joanne as trustee of the Caputo trust.

Kennedy also argues that the trial court misinterpreted the Caputo trust as creating a life estate in the Caputo trust's monetary assets.  He contends that such an interpretation is contrary to Caputo's intent.  We disagree.  By its terms, the Caputo trust instrument created a life estate for Joanne in the trust's assets:  "To decedent's daughter, Joanne, as trustee, all of decedent's real property and personal property to be held in trust to be used by her during her lifetime as she or a successor trustee may direct."  Those terms

11

established "'an estate whose duration is limited to the life of the person holding it'" and thereby created a life estate in the Caputo trust's assets for Joanne. (*Peterson v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 844, 850-851.)

Kennedy generally contends that "the terms" of the Caputo trust instrument do not support such an interpretation, but he fails to specify what language in the instrument might support an alternative interpretation. In fact, Kennedy does not quote from the Caputo trust instrument at all in his opening brief, even when he generally describes the relevant provisions of the Caputo trust. We will not develop the argument for him. (*Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

Finally, Kennedy challenges the sufficiency of the evidence supporting the trial court's determination that he was not Joanne's putative spouse and therefore was not her heir. The challenge lacks merit.

"'Heir'" is defined in the Probate Code as "any person, including the surviving spouse, who is entitled to take property of the decedent by intestate succession under this code." (§ 44.) The putative spouse doctrine is a judicially developed doctrine that is now codified in several statutory provisions and has been applied in probate proceedings. (*Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1120-1121 & 1121, fn. 5 (*Ceja*); *Estate of Leslie* (1984) 37 Cal.3d 186, 199-200 [a surviving putative spouse is entitled to the status of surviving spouse in intestate succession and is entitled to succeed to a share of the decedent spouse's separate property]; *Estate of Sax* (1989) 214 Cal.App.3d 1300, 1304.)

A putative spouse is statutorily defined as a spouse of a void or voidable marriage in which "either party or both parties believed in good faith that the marriage was valid." (Fam. Code, § 2251, subd. (a)(1) [community property division]; Code Civ. Proc., § 377.60, subd. (b)(2) [wrongful death actions].)  Good faith is subjective, so the inquiry "focuses on the actual state of mind of the alleged putative spouse." (*Ceja*, *supra*, 56 Cal.4th at p. 1128.)  "In determining good faith, the trial court must consider the totality of the circumstances, including the efforts made to create a valid marriage, the alleged putative spouse's personal background and experience, and all the circumstances surrounding the marriage." (*Ibid.*)  "A trial court's finding regarding putative spouse status will be upheld on appeal if supported by substantial evidence." (*Id.* at p. 1119.)

Kennedy argues that the evidence is insufficient to support the trial court's determination that Kennedy did not believe in good faith that he and Joanne were validly married.  The argument is forfeited because Kennedy focuses on the evidence favorable to him and does not set forth all of the material evidence on the issue. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *Oakland Bulk and Oversized Terminal, LLC v. City of Oakland* (2025) 112 Cal.App.5th 519, 544.)

In any event, substantial evidence supports the trial court's determination. Kennedy's testimony confirmed that he was "aware that in California you need a marriage license to get married," but he chose not to get a marriage license.  That testimony constitutes substantial evidence that Kennedy did not believe in good faith that he and Joanne were validly married and instead chose not to enter into a legally valid

13

marriage.  (*Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201 ["The testimony of a single witness, even if that witness is a party to the case, may constitute substantial evidence"].)

To the extent that Kennedy also argues that it violates his First Amendment right to the free exercise of religion not to recognize him as Joanne's putative spouse, we decline to exercise our discretion to consider that argument made for the first time on appeal.  (*Souza v. Westlands Water Dist.* (2006) 135 Cal.App.4th 879, 898-899.)

DISPOSITION

The judgment is affirmed.  Mark shall recover his costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:


FIELDS
Acting P. J.


RAPHAEL
J.

14